Socrates Newman, Respondent, *v.* St. Louis & Iron Mountain Railroad Company, Appellant.

### June 10, 1876.

Where a trespass has been willfully committed, and persisted in after earnest remonstrance, with circumstances of aggravation, it is not error to instruct the jury that they are at liberty to give exemplary damages.

Appeal from St. Louis Circuit Court.

*Affirmed, with 10 per cent. damages.*

*Thoroughman & Warren,* for appellants, cited: Shear. & Redf. on Neg. 656; Miller *v.* St. Louis & Iron Mountain R. R. Co., 31 Mo. 262; Buckley *v.* Knapp, 48 Mo. 152; Franz *v.* Hilterbrand, 45 Mo. 122; Conrad *v.* Pacific Ins. Co., 6 Pet. 268; McKenn *v.* Citizens' Ry. Co., 42 Mo. 87; Fisher *v.* Goebel, 40 Mo. 475; Waters *v.* Brown, 44 Mo. 302; Sedgw. on Dam., title Exemplary Damages, Appendix No. 1, p. 609 *et seq.;* Goetz *v.* Ambs, 27 Mo. 28; Green *v.* Craig, 47 Mo. 90.

*Farish & Griffin,* for respondent.

Gantt, P. J., delivered the opinion of the court.

The action in this case was brought in May, 1872. It was tried in the Circuit Court in January, 1875. The petition charged an aggravated and most lawless and malicious trespass upon the land of plaintiff, occupied by him and his family at the time as a residence; the violent, forcible invasion on Sunday morning of his premises, the doing of very great damage to the property, the terrifying and dis-

turbance, and the endangering of the lives, of himself and his family, by blasting with gunpowder, throwing down and disfiguring valuable property. He laid his damages at $20,000. The answer of defendant consisted in a denial of each particular outrage stated in the petition.

The jury before which the cause was tried found for the plaintiff, and awarded to him $3,000 as damages, of which they declared $1,500 to be for compensation for injury done to the property, and $1,500 as exemplary damages.

The testimony fully sustained the allegations of the petition. The plaintiff had occupied his residence, on the yard of which the trespass had been committed, for nearly twenty years. His family consisted of himself, his wife, her mother, and seven children—the youngest of whom was two years old, and the oldest eighteen. Mrs. Newman was at the time in delicate health. Without warning, without any attempt to obtain by permission of the proprietor, or by legal proceedings, the right to enter upon his land and remove a part of an impending rock above the track of the railroad, a party of men employed by the defendant, and "imported" from below to do the job, perpetrated on the morning of Sunday, in the month of May, 1872, the outrage complained of. Their number was six or seven. They had on the Saturday, and perhaps on the Friday, previous, prepared for the work, by drilling holes in the rock to receive the charge of powder. When remonstrated with by Mr. Newman, they replied by threatening to take him to the calaboose. When he thereupon sought the assistance of the police, he was told by these guardians of public order that they would arrest him if he attempted to stop the work of the trespassers, who were invading and destroying his property; and, on Sunday morning, he was awaked by the noise of the blast by which the rock was blown to pieces. Several other blasts followed in the course of the day. The work of drilling holes and putting

in charges of powder went on in the face of all the protests which he could make—and he seems to have protested earnestly, but fruitlessly, against the wrong—but no assistance was rendered him by the police, and, for the greater part of the day, the premises of the plaintiff were the scene of disturbance, violence, tumult, and danger. The fragments of the rock burst by the blasting flew in various directions, and the beauty of the lot of plaintiff, and its value as a building site, were materially impaired by the work of the invading party.

At the instance of the plaintiff the court instructed the jury that, "if the defendant entered upon premises actually in possession of plaintiff, and, by blasting rock thereon, did the injuries complained of in plaintiff's petition," they must find for plaintiff.

2. "That if the injury complained of was the blasting away of an overhanging mass of rock suitable for an out-look, and if the surface of it was inclosed so as to form part of plaintiff's homestead and premises, then the same was in the exclusive possession of plaintiff, although defendant was in possession of a railroad track directly below."

3. "That, if they find for plaintiff, they will assess his damages at such sum as will compensate him for the injury done to his possession by reason of blasting off the said projecting rock; and the fact that the defendant persisted in blasting said rock against the earnest protestations of plaintiff will *not* be taken into consideration by the jury in assessing plaintiff's damages."

4. "If, however, the jury find for plaintiff, and believe that the defendant, its servants and agents, in blasting off said rock, were guilty of gross negligence and recklessness, and a disregard for the safety, peace, health, and comfort of plaintiff and his family, the jury may, in addition to compensation, allow also exemplary damages."

5. "Exemplary damages are damages over and above the

loss sustained, and are intended for the double purpose of punishing the defendant and as an example to retain [*Q*. restrain?] others from a like violation of law."

To the giving of these instructions defendant excepted.

The defendant asked, and the court gave, the following instructions:

1. "If, at the time of the happening of the injury complained of, and from then to the institution of this suit, defendant was in the actual possession and occupancy upon which it is alleged the defendant trespassed, claiming the same adversely to the plaintiff, the court instructs the jury that, in respect to the parts so possessed and occupied by defendant, plaintiff cannot recover in the action for any entry or trespass on the same, whether the part so possessed or occupied was in a public street or on the premises of plaintiff."

2. "It being admitted by the parties to this suit that, at the time of filing in the recorder's office the map called 'Eiler's map,' put in evidence by the plaintiff, the town of Carondelet was the owner of the land represented on said map of which the premises in dispute are part, the court instructs the jury that the filing of said map had the effect, in law, of dedicating to public use, for the purpose of a street, all of the ground represented on said map as 'A Tow, or Water street.'"

3. "The court instructs the jury that, although the plaintiff, at the time of the injury complained of, was in the actual possession of the projecting rock spoken of by witnesses, yet, if said rock was outside of said block 5, and within the street or way called or designated as 'a Tow, or Water street,' on Eiler's map, put in evidence, the plaintiff is not entitled to recover anything on account of the diminution of the permanent value of the plaintiff's premises occasioned by the removal of said rock by defendant."

And refused to instruct as follows:

"That, in case the jury find for the plaintiff in respect to the entry and removal of the projecting rock spoken of by

the witnesses, they should assess his damages on that score at such sum as the evidence shows will fairly compensate him for the actual loss and injury sustained by him by reason of such entry and trespass ; but, under the evidence in the case, the jury are not warranted in giving the plaintiff vindictive damages, or damages by way of punishment.''

To the refusal of this the defendant excepted.

1. We have before us the record of a case well calcu-lated to arrest our attention and excite our surprise. We are quite aware of the necessarily imperfect picture which such a representation gives of what was shown by the evi-dence of living witnesses at the trial. We are admonished, by what is shown by this transcript, to make full allowance for this imperfection. We should otherwise be unable to understand how, in St. Louis, in the year 1872, a trespass so ruffianly and monstrous could have proceeded to its con-summation on the third day (and *that* day *Sunday*), in the face of remonstrances by the proprietor of the premises invaded, and without opposition—almost with the aid—of the police ; and a difficulty of equal magnitude would be encount-ered if we attempted, by the light of anything in this record, to justify the exaction by the Circuit Court of a remitting of the sum of $1,000 as the condition of over-ruling the motion for a new trial. Of course the Circuit Court *was* thus justified by something not appearing to us— something to be gathered from the events of the trial, but not capable of being preserved in the report of it. But—the only point pressed with any earnestness, by the counsel for appellant, being the refusal of the trial court to instruct the jury that this was not a case for punitive or exemplary damages—we cannot avoid saying that we are of opinion that it is precisely such a case as would justify any amount of exemplary damages within the limit of the claim made by the petition. We have not often heard of a trespass more inexcusable, better calculated to lead to a breach of the peace, and more discreditable to all who promoted it. The ignorant instruments of its perpetration, though perhaps

guilty of a breach of the criminal law, are less to be blamed than those by whose direction and authority they acted.

We do not consider that the question whether, under the circumstances disclosed, exemplary damages could be given by the jury is deserving of a serious answer. No court has been more careful than the Supreme Court of the United States in protecting corporations, where charged with negligence, against verdicts dictated by passion or prejudice. In the case of the *Milwaukee & St. Paul Railway Company* v. *Arms*, decided at the October term 1875 (reported at p. 220, and following, of the Central Law Journal, vol. 3, No. 14, April 7, 1876), that tribunal reversed a judgment in which exemplary damages had been awarded against the company, without any such misconduct on its part as in the opinion of the court justified their infliction. Mr. Justice Davis, delivering the opinion of the court, declares that the absence of the care necessary on the part of the employees of the company to prevent the occurrence of the disaster, whether it be called gross or ordinary negligence, " did not authorize the jury to visit the company with damages beyond the limit of compensation for the injury inflicted. *To do this there must have been some willful misconduct, or the entire want of care which would raise the presumption of a conscious indifference to consequences.*" No one, we think, can doubt that the Supreme Court of the United States would have considered the case before us as not only permitting, but calling for, the most exemplary damages. It is unnecessary to add that the Supreme Court of Missouri has, in similar cases, laid down the same rule. *Kennedy* v. *North Missouri R. R. Co.*, 36 Mo. 351; *Green* v. *Craig*, 47 Mo. 90; *Malecek* v. *Tower Grove R. R. Co.*, 57 Mo. 17. The case last cited should have prevented the prosecution of the appeal in this case; and the judgment, with the concurrence of Judge LEWIS—Judge BAKEWELL, having been of counsel, not sitting—is affirmed, with 10 per cent. damages.