NIEHOFF (GOLSON v.). See Case No. 5,-524.

---

## Case No. 10,261.

### NIETO v. CLARK.

[Boston Courier, March 23, 1858.]

District Court, D. Massachusetts. 1858.[1]

CARRIERS—CONDUCT OF SERVANTS TOWARDS LADY PASSENGERS.

In giving his decision. SPRAGUE, District Judge, said there were several disingenuous suppressions of facts on the part of the libellant, and he held that the respondent was fully justified in dismissing him. Libel dismissed.

1 [Affirmed in Case No. 10,262.]

## Case No. 10,262.

### NIETO v. CLARK.

[1 Cliff. 145; [1] 16 Leg. Int. 358.]

Circuit Court, D. Massachusetts. Oct., 1858.[2]

CARRIERS — INDECENT CONDUCT OF SEAMAN TOWARDS LADY PASSENGER—DISCHARGE IN FOREIGN PORT.

1. Where a seaman had attempted a rape upon a female passenger in a foreign port. and the injured party refused to remain on board. and demanded the return of her passage-money unless the offender was dismissed. the master was justified in the immediate discharge of the seaman.

2. Discharges in a foreign port, without the express approval of the American consul. when one is present, or without the consent of the seaman, are not favored in the acts of congress or the courts of the United States, and in such cases the burden is upon the master to show the reasons of the discharge, and to prove to the satisfaction of the court that they were just and reasonable.

3. The contract of all passengers entitles them to respectful treatment from those in charge of the vessel, and, in respect to female passengers, includes an implied stipulation that they shall be protected against obscene conduct, lascivious behavior, and every immodest approach.

[Cited in Pendleton v. Kinsley, Case No. 10,-922.]

[Cited in Bass v. Chicago & N. W. Ry. Co., 36 Wis. 460; Batton v. South & N. A. R. Co., 77 Ala. 591; Bryant v. Rich, 106 Mass. 189. Cited in brief in Chicago & E. R. Co. v. Flexman. 103 Ill. 548. Cited in Craker v. Chicago & N. W. Ry. Co., 36 Wis. 668. 672; Dwinelle v. New York Cent. & H. R. R. Co., 120 N. Y. 126, 24 N. E. 319; Goddard v. Grand Trunk Ry. Co., 57 Me. 217; Louisville & N. R. Co. v. Ballard, 85 Ky. 311. 3 S. W. 530: Sira v. Wabash Ry. Co., 115 Mo. 136, 21 S. W. 906: Spohn v. Missouri Pac. Ry. Co., 87 Mo. 78: Stewart v. Brooklyn & C. R. Co., 90 N. Y. 591.]

[Appeal from the district court of the United States for the district of Massachusetts.]

On the 29th of October, 1859, the libellant [Manuel Nieto] shipped as steward on board the bark Evangeline, of which the respondent [William R. Clark] was master, for a voyage to Valparaiso and other ports in the Pacific Ocean, and back to Boston. At Valparaiso a lady engaged a passage to the United States. While the vessel was lying at Talcahuano, Chili, the libellant, in the nighttime entered the lady's state-room, attempted a rape, and behaved with indecency in the lady's presence. Upon complaint to the respondent, the libellant was immediately discharged, and put ashore. Upon a representation of the case to the American consul at Talcahuano, the respondent was advised to pay the steward his wages, and the amount was therefore tendered him, but refused. Shortly after his discharge the libellant shipped on board the Osprey and returned to Boston, when the libel was brought, claiming wages, damages, and expenses to the amount

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]
2 [Affirming Case No. 10,261.]

of two hundred and twenty-six dollars seventeen cents. After the answer was filed, upon motion of the libellant praying that the respondent might be directed to pay into court any sum he relied on as a tender, an equal sum to that offered at Talcahuano was paid over to the libellant. The libel was dismissed without costs, in the district court. [Case No. 10,261.]

F. W. Sanger, for libellant.
J. H. Prince, for respondent.

CLIFFORD, Circuit Justice. All the evidence of the libellant's misconduct arises from his own confession to the mate of the Evangeline, who accompanied him on shore at the time he was discharged. His testimony is to the effect that, while they were going on shore, he asked the libellant why he went into the state-room of the lady, and that the libellant replied that it was because he wanted to get clear of the ship. Both question and answer clearly indicate that he had full knowledge of the complaint made against him, and they also warrant the conclusion that his misconduct was well known to the crew, and that the order of the master in sending him on shore was acknowledged by himself to be just and proper. Had he been ignorant of the charge, he would have inquired what was meant by the question; and if he had been innocent of the assault upon the lady, he would have denied the accusation. Nothing of this kind was done. On the contrary, his answer is significant of the fact that he was fully apprised of the accusation as set forth in the answer, and that his misconduct was too well known to admit of concealment or denial. After his discharge, and while the Evangeline lay in the harbor of Talcahuano, the libellant came on board, and again stated to the mate that he was glad he was clear of the ship, and made no complaint that he had been improperly or unjustly sent on shore. These conversations took place about the time of his discharge or shortly after, while the recollection of the occurrence was fresh in his memory, and being unaccompanied by any protestation of innocence, or any complaint that he had been falsely accused or harshly treated, afford a very strong ground of presumption that he was entirely conscious of the truth of the charge as set forth in the answer, and that he fully acquiesced in the justice of the order of the master dismissing him from the ship on that account.

Masters cannot lawfully discharge seamen in a foreign port before the complete fulfilment of their mutual obligations, without just and valid reasons. 3 Kent, Comm. (9th Ed.) 253; Curt. Merch. Seam. 148; The Exeter, 2 C. Rob. Adm. 261; Hutchinson v. Coombs, [Case No. 6,955]. First offences, unless of an aggravated character, are not in general regarded as sufficient to justify the master in ordering a seaman to be discharged, and repentance and offer of amends, even in case of aggravated offences not amounting to a disqualification, or which do not render the delinquent unfit to be retained, ought to entitle him to a restoration to his situation. Theft, quarrelling, and disobedience of orders are the only enumerated causes in some of the continental codes for which seamen may be discharged in a foreign port without their consent, and all appear to concur in the general doctrine, that such harsh measures cannot be justified in law, unless it be for such gross or persistent misconduct as shows that the delinquent is disqualified for his situation, or unfit on that account to be retained. Offences, such as quarrelling, or disobedience of orders, or even minor thefts, vary so much in the degree of guilt to be attached to the delinquent, as is shown from experience, that any arbitrary specification of cases has not proved to be either just or satisfactory. Consequently, no such rules have ever been acknowledged in the jurisprudence of England or of the United States. Seamen may be discharged for aggravated offences, or for such gross and persistent misconduct as shows them to be disqualified to perform the obligations of their contract. Accordingly, the laws of the United States do not assign any specific offences for which a seaman may in all cases be discharged, but allows the master to dismiss him, as before remarked, for offences of an aggravated character, and for such gross and persistent violation of his duty and the regulations of the ship as show that he is radically disqualified for his situation and unfit to be retained, leaving the justification of the master in all cases to depend upon the character or aggravation of the offence, and the degree and perverseness of the seaman's misconduct. Discharges in a foreign port, without the express approval of the American consul, when one is present, or without the consent of the seaman, are not favored in the acts of congress or by the courts of the United States; and in all such cases the burden of proof is upon the master to show the reasons of the discharge, and it is incumbent upon him to prove to the satisfaction of the court that they were clearly just and reasonable. As a general rule, the marine law requires the master to receive back a seaman when he has thus discharged him, if he repents and seasonably offers to return to his duty and make satisfaction; and if the master, under such circumstances, refuses to restore him, or if the seaman has been unduly discharged, he may follow the ship and recover his wages for the voyage and the expenses of his return. Masters are made subject to fine and imprisonment, by the tenth section of the act of the 3d of March, 1825 [4 Stat. 117], if, without justifiable cause, they maliciously force any officer or mariner on shore when abroad, or leave him behind in any foreign port or place, or refuse to bring home those they carried out, who are in a condition and willing to return. All of these regulations are for the benefit of sea-

men, and were designed to prevent their discharge in foreign ports, without their consent. Notwithstanding these regulations and prohibitions, seamen may be discharged at their own request, if granted in good faith at the time the request is made. Applying these principles to the present case, it is obvious that the prayer of the libel cannot be granted.

According to the testimony, as already stated, the libellant had been guilty of a gross outrage upon a lady who had taken passage in the vessel to the United States. His misconduct is confessed, and it would seem was publicly known to those belonging to the vessel. After what had occurred, it could hardly be expected that she would consent to remain on board unless the offender was discharged. To an unoffending female thus circumstanced his presence would be painful, and she might find it very inconvenient on board a merchant vessel to seclude herself at all times of the day from those parts of the vessel necessarily frequented by those in charge of the vessel. She was accompanied by her brother; and it would be unreasonable to hold that the master was obliged to allow his passengers to leave the ship, to refund their passage-money, in order to retain the libellant. Whatever loss or inconvenience he suffered, arising out of his discharge, was the direct consequence of his own misconduct towards the lady passenger, and was in no sense the result of any unjust or illegal decision of the master. Passengers are under obligation to conform to the reasonable regulations of the vessel, and to a certain extent owe obedience to the commands of the master, as the necessary consequence of the relation they bear to the ship during the voyage; and they are also entitled to respectful treatment from the master and other officers in charge of the vessel, and may well claim to be exempt from insult and personal violence from the crew. They do not contract merely for ship room and the right to personal existence, but for suitable food, comforts, and necessaries, and for protection against personal rudeness from all those in charge of the vessel, and every wanton interference with their persons. Chamberlain v. Chandler [Case No. 2,575].

In respect to female passengers, the contract proceeds yet further, and includes an implied stipulation that they shall be protected against obscene conduct, lascivious behavior, and every immodest and libidinous approach. An offence toward an innocent and unoffending female, such as is described in the answer, and substantially admitted in the proofs, must be considered as one of great aggravation; and, in view of the embarrassments likely to ensue from such an outrage, when committed on board a merchant vessel, in a distant sea, especially in case the injured party refuse to remain on board, unless the offender was dismissed, might well be regarded as disqualifying the libellant for his situation, and as rendering him unfit to

be retained in his capacity as steward. It occurred in the night-time, during the absence of the master, and, in view of all the circumstances disclosed in the testimony, afforded a just and legal ground for the discharge of the libellant.

Having come to this conclusion, the result is, that the decree of the district court must be affirmed with costs.