# THE SUPREME COURT

OF

## THE STATE OF MISSOURI.

MARCH TERM, 1874, AT ST. LOUIS.

CONTINUED FROM VOL. LVI.

---

JACOB MALECEK, Appellant, *vs.* TOWER GROVE AND LAFAY-
ETTE RAILWAY COMPANY, Respondent.

1. *Evidence—Corporations—Admissions by agent, bind when.*—Language used by
the superintendent of a street railway company, admitting and justifying an
assault of one of its drivers, was held to bind the company.
2. *Corporations—Exemplary damages.*—It is the well settled law of this State,
that corporations, like natural persons, are liable in exemplary damages when
the facts of the case are of a character to warrant them.

| | |
|---|---|
| 57 | 17 |
| 41a | 312 |
| 57 | 17 |
| 119 | 342 |
| 57 | 17 |
| 75a | 233 |
| 57 | 17 |
| 102a | 2611 |
| 57 | 17 |
| 98a | 454 |

*Appeal from St. Louis Circuit Court.*

*Bakewell & Farish,* for Appellant.

*E. B. Sherzer,* for Respondent.

ADAMS, Judge, delivered the opinion of the court.

This was an action on the case founded on a breach of duty
by the defendant as a common carrier, in carrying the plain-
tiff as a passenger on its street railroad car.

2—VOL. LVII.       17

The petitioner alleged that the defendant was a corporation engaged in the business of carrying persons, as passengers, from one point to another in the city of St. Louis, as a common carrier; that on the 20th of February, 1872, the defendant was running its cars from Fourth Street to Tower Hill, within the limits of the city of St. Louis; that on said day the defendant undertook, as a common carrier, to convey plaintiff carefully for hire on said railroad cars, and after the plaintiff entered the car and paid his fare by depositing his ticket in the ticket-box, as required by the regulations of defendant, the driver, being the conductor, in language coarse and grossly insulting, called upon the plaintiff to put in his fare, denied that plaintiff had deposited his ticket, charged him with attempting to avoid the payment of his fare, and with having done the same thing before, and threatened to put him out, and thereupon stopped his car, and rushed at plaintiff, grasped his arm, which was broken at the time and in a sling, raised him from his seat, and abused and villified the plaintiff with coarse, indecorous and profane language, calling him a swindler, etc.; that this assault was continued off and on for fifteen or twenty minutes; that there were many passengers in the car; that the plaintiff was old and at the time in feeble health, having recently broken his arm; that he had neither said nor done anything to provoke the insults; that the defendant was immediately notified of the misconduct of the driver and conductor, but instead of discharging him, retained him in his place.

The plaintiff, by reason of the premises, claimed damages in the sum of five thousand dollars.

The defendant by its answer, denied all the material allegations of the petition, and set up as a defense, that the plaintiff had not paid his fare as alleged, and that the driver reminded him of the neglect, but used no abusive epithets, and gently took his arm, but on being informed by him that his fare had been paid, desisted, etc.

The case was submitted to a jury, and resulted in a verdict and judgment for five hundred dollars in favor of the plain-

tiff. On appeal to the General Term, the judgment was reversed and the cause remanded. From this judgment of reversal the plaintiff has appealed to this court.

On the trial at Special Term, the plaintiff gave evidence strongly tending to prove all the material allegations of his petition. The evidence conduced to show that the insults and threats of the conductor were kept up till they arrived at a station where the conductor was changed, and he gave the reins to another driver. But the first driver still remained in the car and continued to abuse and insult the plaintiff. To the introduction of the evidence touching the insults and acts of the driver, after he had been relieved by the second driver, the defendant objected but the court overruled the objection and the defendant excepted.

About three days afterward, plaintiff went to a man named Buell, who was in the employment of defendant, and its superintendent, having charge of the cars, and was going to say something to him, and the latter told him to "hush up," that he had directed the drivers to throw him out of the car, remarking, that the plaintiff did not pay. This conversation with Buell was objected to by the defendant, but was admitted as evidence, and the defendant excepted.

The defendant's driver, on the part of the defendant, testified that plaintiff failed to put in his ticket, and on that account he threatened to put him out—used no abusive language, and gently took his arm, but let it go and desisted from further action, after being told by some one he had put in his ticket.

The evidence was contradictory as to whether plaintiff had put his ticket in the box.

At the instance of the plaintiff, the court gave the following instructions to the jury, to which the defendant excepted:

"1st. If the jury believe from the evidence, that the plaintiff was a passenger on the car of defendant, and had duly paid his fare, and that the agent and employee of defendant being then engaged in his business as conductor and driver of said car, threatened to put plaintiff off the said car on the

ground that his fare was unpaid, they will find for plaintiff; and in estimating the damages, the jury are not confined to the mere corporal injury, if any, done plaintiff, but may take into consideration the wounded feelings of plaintiff, the insulting character and circumstances of the conduct of defendant's driver and conductor, and all the circumstances of life and health of plaintiff, and the circumstances of the alleged outrage, and thereupon award such exemplary damages as the circumstances may in their judgment require."

"2nd. The court instructs the jury, that the defendant, as a common carrier of passengers, was bound not only to carry its passengers safely, but to treat them respectfully, and if the passenger was assaulted through the wilful misconduct of defendant's driver and conductor, whilst in defendant's car, defendant is responsible."

At the instance of the defendant, the court gave the following instruction :

" The court instructs the jury if they believe from the evidence the plaintiff failed, and upon his attention being called thereto, refused, to pay his fare, then defendant's conductor had a right to require plaintiff to leave said car, and if plaintiff refused to go, and in order to compel him to leave, defendant's conductor took hold of plaintiff, using no more force than was necessary to remove him, plaintiff cannot recover, and they will find a verdict for defendant."

The defendant also asked seven other instructions, which were refused by the court, and the defendant excepted.

The refused instructions maintained the proposition, that under no circumstances was the plaintiff entitled to recover exemplary damages, and further maintained that the conductor had a right to determine whether the plaintiff had paid his fare, and if he had reasonable cause to believe the plaintiff had not paid his fare, this circumstance alone was a bar to the recovery of exemplary damages.

1. The first point which demands our attention, is the action of the court in admitting the evidence that was objected to on the trial by the defendant. This was not an action

simply for assault and battery, nor was it an action of assumpsit on the contract for carrying the plaintiff. It was what was formerly denominated an action on the case founded on the defendant's breach of duty as a common carrier of passengers for hire on its railroad cars. The contract is not declared on, but is set out by way of inducement, and its performance on the part of plaintiff, is alleged to show that there was no justification at all for the alleged assault and ill-treatment of the plaintiff. From the fact that the plaintiff was on the defendant's car as a passenger who had paid his fare, it results that the duty of defendant's agent was to carry him safely and to treat him with kindness and respect during the whole voyage. (See Chamberlin vs. Chandler, 3 Mons., 242; Nieto vs. Clark, 1 Cliff., 145.)

Whatever occurred between the defendant's agents and the plaintiff at any time during the voyage, was competent proof to go to the jury. There was no evidence that the first driver had been discharged by the defendant when he yielded the reins to the second driver, and although not in active work, he was still there, continuing the same insults toward the plaintiff, and the defendant in fact refused to dismiss him but retained him in its employment. The temporary rest from his work, did not relieve the company from their responsibility for his insults to passengers.

The evidence of the admissions of Buell, the company's superintendent, was certainly admissible to prove that it recognized the assault, etc., of its driver, and justified it upon the ground of the non-payment of fare. Corporations can only act and speak through their authorized agents. The acts and admissions of Buell, in this regard, were those of the corporation.

2. The instructions given on both sides, when taken together, placed the case fairly before the jury.

The question in regard to exemplary damages has been considered by this court in several cases—and it may now be considered as the settled law of this State, that corporations, like natural persons, are liable for exemplary damages, when

the facts of the case will warrant the jury in awarding them. (See Perkins vs. M., K. & T. R. R. Co., 55 Mo., 201; Gillett vs. Mo. Valley R. R. Co., 55 Mo., 315; Goddard vs. the Grand Trunk Railway, 10 Am. Law Register, 33.)

Although the driver might have good reason to believe that the plaintiff had not paid his fare, yet, if in truth he had paid the fare, the driver's belief would not operate as a bar to the recovery of exemplary damages. It might however, be taken into consideration by the jury, and no doubt was, in mitigation of damages. But the refused instructions went further, and required that his belief, if well founded, should be a bar to exemplary damages.

In my judgment, there was no error in giving and refusing instructions. The judgment of the General Term is reversed, and the judgment at Special Term affirmed. Judge Wagner absent; the other judges concur.