ELIZABETH S. GILLESPIE, Appellant, *v.* BROOKLYN HEIGHTS
RAILROAD COMPANY, Respondent.

1. COMMON CARRIER — LIABILITY FOR DAMAGES RESULTING FROM
INSULTING CONDUCT OF EMPLOYEE — DAMAGES ARE COMPENSATORY
ONLY, AND DO NOT INCLUDE PUNITIVE OR EXEMPLARY DAMAGES.   A
common carrier is liable in damages to a passenger for an injury to his
feelings caused by the insulting language of its employee, upon the
ground of a breach of its contract which obligates it not only to transport
the passenger but to accord to him respectful and courteous treatment
and to protect him from insult from strangers and its own employees.
Among the elements of damages in such a case and which may be con-
sidered in determining their amount, are the humiliation and injury to his
feelings suffered by him, not, however, including any injury to his char-
acter resulting therefrom, and he is entitled to recover compensatory dam-
ages only, not including punitive or exemplary damages.   The authorities
collated and discussed.

2. SAME.   An electric street railroad company is liable to a passenger in
compensatory damages for the humiliation and injury to her feelings,
where it appears that she tendered the conductor an amount more than
the fare but not in excess of that permitted by the company and asked

for a transfer, and, after the conductor had attended to another passenger, she demanded the change ; whereupon the conductor denied having received any amount in excess of her fare, and in an abusive and impudent manner not only refused to return the change, but grossly insulted her by calling her a dead beat and a swindler, and by the use of other insulting and improper language, even after a fellow passenger had informed him that she had given him the amount claimed; and the direction of a verdict in such a case for the change upon the ground that that was the extent of the company's liability constitutes reversible error.

*Gillespie* v. *Brooklyn Heights R. R. Co.*, 80 App. Div. 640, reversed.

(Argued March 21, 1904; decided April 26, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 20, 1903, affirming a judgment in favor of defendant entered upon a verdict directed by the court in favor of plaintiff for nominal damages.

On the twenty-sixth of December, 1900, the plaintiff, who was a practicing physician, boarded one of the defendant's cars at the corner of Nostrand avenue and Fulton street at about 10 : 20 in the morning. As to what thereafter occurred, the plaintiff testified : " I know who the conductor was on that car, Conductor Wright. He came to collect my fare just a few minutes after I got on the car. I gave him a twenty-five cent piece and said to him, 'A transfer, please, to Reid Avenue.' Just at that moment a lady on the opposite side called to him. He crossed and he went to punch a transfer and I thought it was mine, and I said to him, 'Please don't do that until I speak with you.' He paid no attention. After he gave the lady her transfer I said to him, ' Won't you please come here ? I wish to speak to you about the transfer ?' So he came across very growly and roughly, and wanted to know, ' What is the matter with yez ?' I said, ' Won't you please tell me — I don't know much about those streets away up here — which would be the nearest, Reid Avenue or Sumner Avenue, to Stuyvesant Avenue.' He said, ' We don't have any Reid Avenue transfers ; we transfer at Sumner Avenue.' ' Well,' I said then, ' I thank you; please give me a transfer for Sumner Avenue and my change,' and he actually holloed

at me, 'What change?' I said, 'The money I gave you, twenty-five cents, and I want my change,' and he put his hands in his pocket and he pulled out a whole handful of pennies or nickels; he said, 'do you see any twenty-five cents there?' He said, 'It is the likes of ye — you are a dead beat; you are a swindler. I know the likes of ye;' he said, 'You didn't give me twenty-five cents.' The lady that sat next to me set the conductor right. She said to him, 'I am sure, sir, she gave you a quarter of a dollar; I saw her give it to you,' and he turned — 'Well, perhaps you are a friend of hers.' Then he said that dead beats like me, he knew that every day they were traveling on the cars; he knew the swindlers and the dead beats — 'But you can't dead beat me. I know you; you belong to them,' and he said then, 'Why, only here the other day, I had just such a woman as you trying to dead beat me out of money,' and I said, 'I want my change and I don't want such insolence.' Then he walked back and two gentlemen got on the car, and he called the attention of those gentlemen to me and said, pointing to me — I went to the door, and he was telling them how I was trying to swindle him, 'But,' he said, 'I know them; they are all dead beats; she can't beat me.' I said to him, 'Look here, sir, I know President Rossiter, and I shall make a complaint of you,' and he came over close to me — he said, 'Ah, the likes of you,' he said. 'You couldn't make a complaint to President Rossiter,' he said: 'I have been on this road too long for you to have any authority with him — no, no.' 'Well,' I said, 'I shall tell him,' and I went back and sat down."

The plaintiff further and in substance testified that she noticed that there was a smell of whisky in the conductor's breath; that he did not give her her change at all; that he gave her no transfer; that he said nothing except merely that he had nothing to do with her, and that "I was a dead beat and a swindler." She then testified as to her efforts to see President Rossiter; that when she reached his office she was about four miles from home; that she walked that distance because

she had no money with which to pay her fare; that she became sick, was confined to the bed for two days, and as to its effect upon her business. All this evidence was undisputed.

At the close of the plaintiff's case the defendant made a motion for a dismissal of the complaint, and the court said: "The allegation of the complaint is that it was done maliciously by the servant of the corporation, so that takes it out of the action against the corporation anyway, so far as the slander part of it is concerned. The only question now is whether she is entitled to recover the amount that she paid for the fare." The plaintiff claimed she was entitled to recover more. The court thereupon said: "On the testimony as it stands they (the company) did receive it; it is uncontradicted now that they did receive it. I think I will direct a verdict for the twenty cents if you (referring to the defendant's counsel) want to."

The plaintiff excepted to the direction of a verdict and asked to go to the jury "upon the facts in the case, upon the wrong and the wrongful detention of this woman's money, and the suffering occasioned by it," and the court directed a verdict for the plaintiff for twenty cents, and held that that was the extent to which the railroad company was liable and that "the other damages, if any have grown out of it, are not the proximate result of the act of the conductor." The verdict was directed with the consent of the defendant's counsel.

*Melville J. France* and *James D. Bell* for appellant. The defendant violated its duty to carry its passenger safely and properly, and to treat her respectfully. (*Dwinelle* v. *N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 117; *Stewart* v. *B. & C. R. R. Co.*, 90 N. Y. 588; *Palmeri* v. *M. R. Co.*, 133 N. Y. 261; *Texas, etc., R. R. Co.* v. *Jones*, 39 S. W. Rep. 124; Thomp. on Neg. § 3185; *Goddard* v. *G. T. R. Co.*, 57 Me. 202; *Nieto* v. *Clark*, 1 Cliff. 145; *K. T. Co.* v. *Lane*, 103 Tenn. 376.) The defendant's servant, in the course of his employment, wrongfully withheld the plaintiff's money and injured her further in his abusive and insulting language to

her at the time he refused to return it to her. (*Mulligan* v. *N. Y. & R. B. R. Co.*, 129 N. Y. 506; *Palmeri* v. *M. Ry. Co.*, 133 N. Y. 261; *Jacobs* v. *T. A. R. R. Co.*, 71 App. Div. 199; *Penny* v. *N. Y. C. & H. R. R. R. Co.*, 34 App. Div. 10.)

*I. R. Oeland* and *George D. Yeomans* for respondent. The measure of plaintiff's damages was twenty cents, and the court, with the consent of the defendant, properly instructed a verdict for the plaintiff for the sum of twenty cents. (*Seifter* v. *B. H. R. R.*, 169 N. Y. 256; *Laidlaw* v. *Sage*, 158 N. Y. 73; *Connelly* v. *Rist*, 20 Misc. Rep. 31; *Hollenbach* v. *Johnson*, 79 Hun, 499; *Carpenter* v. *Penn. R. R. Co.*, 13 App. Div. 328.)

MARTIN, J.   The principal and practically the only question involved upon this appeal is whether the plaintiff was entitled to recover for the tort or breach of contract proved, an amount in excess of the sum she actually overpaid the defendant's conductor.   Confessedly the plaintiff was a passenger on the defendant's car and entitled to be carried over its road.   That at the time of this occurrence the relation of carrier and passenger existed between the defendant and the plaintiff is not denied.   The latter gave the conductor a quarter of a dollar from which to take her fare, he received it, but did not return her the twenty cents change to which she was entitled. She subsequently asked him for it, when he, in an abusive and impudent manner, not only refused to pay it, but also grossly insulted her by calling her a dead beat and a swindler, and by the use of other insulting and improper language, even after a fellow-passenger had informed him that she had given him the amount she claimed.

In this case there was obviously a breach of the defendant's contract and of its duty to its passenger.   It was its duty to receive any coin or bill not in excess of the amount permitted to be tendered for fare on its car under its rules and regulations, and to make the change and return it to the plaintiff or person tendering the money for the fare.   That certainly

must have been a part of the contract entered into by the defendant, and the refusal of the conductor to return her change was a tortious act upon his part, performed by him while acting in the line of his duty as the defendant's servant. To that extent, at least, the contract between the parties was broken, and as an incident to and accompanying that breach, the language and tortious acts complained of were employed and performed by the defendant's conductor.

This brings us to the precise question whether, in an action to recover damages for the breach of that contract and for the tortious acts of the conductor in relation thereto, the conduct of such employee and his treatment of the plaintiff at the time may be considered upon the question of damages and in aggravation thereof. That the plaintiff suffered insult and indignity at the hands of the conductor, and was treated disrespectfully and indecorously by him under such circumstances as to occasion mental suffering, humiliation, wounded pride and disgrace, there can be little doubt. At least the jury might have so found upon the evidence before them.

This question was treated on the argument as a novel one, and as requiring the establishment of a new principle of law to enable the plaintiff to recover damages in excess of the amount retained by the defendant's conductor which rightfully belonged to her. In that, we think counsel were at fault, and that the right to such a recovery is established beyond question, as will be seen by the authorities which we shall presently consider. The consideration of this general question involves two propositions: The first relates to the duties of carriers to their passengers; and the second to the rule of damages when there has been a breach of such duty.

The relation between a carrier and its passenger is more than a mere contract relation, as it may exist in the absence of any contract whatsoever. Any person rightfully on the cars of a railroad company is entitled to protection by the carrier, and any breach of its duty in that respect is in the nature of a tort and recovery may be had in an action of tort as well as for a breach of the contract. (2 Sedgwick on

Damages, 637.)   In considering the duties of carriers to their passengers, we find that the elementary writers have often discussed this question, and that it has frequently been the subject of judicial consideration.   Thus in Booth on Street Railways (§ 372) it is said: "The contract on the part of the company is to safely carry its passengers and to compensate them for all unlawful and tortious injuries inflicted by its servants.   It calls for safe carriage, for safe and respectful treatment from the carrier's servants, and for immunity from assaults by them, or by other persons if it can be prevented by them.   No matter what the motive is which incites the servant of the carrier to commit an improper act towards the passenger during the existence of the relation, the master is liable for the act and its natural and legitimate consequences. Hence, it is responsible for the insulting conduct of its servants, which stops short of actual violence."

In Hutchinson on Carriers (§§ 595, 596) the rule is stated as follows: "The passenger is entitled not only to every precaution which can be used by the carrier for his personal safety, but also to respectful treatment from him and his servants. From the moment the relation commences, as has been seen, the passenger is, in a great measure, under the protection of the carrier, even from the violent conduct of other passengers, or of strangers who may be temporarily upon his conveyance.   *   *   *   The carrier's obligation is to carry his passenger safely and properly, and to treat him respectfully; and if he intrusts the performance of this duty to his servants, the law holds him responsible for the manner in which they execute the trust.   The law seems to be now well settled that the carrier is obliged to protect his passenger from violence and insult from whatever source arising.   He is not regarded as an insurer of his passenger's safety against every possible source of danger, but he is bound to use all such reasonable precautions as human judgment and foresight are capable of to make his passenger's journey safe and comfortable.   He must not only protect his passenger against the violence and insults of strangers and co-passengers, but *a fortiori*, against the violence and insults of his own servants.

If this duty to the passenger is not performed, if this protection is not furnished, but, on the contrary, the passenger is assaulted and insulted through the negligence or willful misconduct of the carrier's servant, the carrier is necessarily responsible. And it seems to us it would be cause of profound regret if the law were otherwise. The carrier selects his own servants, and can discharge them when he pleases, and it is but reasonable that he should be responsible for the manner in which they execute their trust."

In Thompson on Negligence (§ 3186) the learned writer, after stating the foregoing rule, adds: " The carrier is liable absolutely, *as an insurer*, for the protection of the passenger against assaults and insults at the hands of his own servants, because he contracts to carry the passenger safely and to give him decent treatment *en route*. Hence, an unlawful assault or an insult to a passenger by his servant is a *violation of his contract* by the very person whom he has employed to carry it out. The intendment of the law is that he contracts absolutely to protect his passenger against the misconduct of his own servants whom he employs to execute the contract of carriage. The duty of the carrier to protect the passenger during the transit from the assaults and insults of his own servants being a duty of an *absolute nature*, the usual distinctions which attend the doctrine of *respondeat superior* cut little or no figure in the case."

Again in Schouler on Bailments (§ 644) it is said: " Nor is it only good treatment from fellow-passengers and from strangers coming upon the car, vessel or vehicle that each passenger is entitled to, but he should be well treated by the passenger-carrier himself and all whom such carrier employs in and about the vehicle in the course of the journey. If the general doctrine of master and servant may be said to apply here, it applies with a very strong bias against the master, even where the servant's acts appear to be aggressive, wanton, malicious, and, so to speak, such as one's strict contract of service or agency does not readily imply. Such is the general construction, so long as the offensive words and acts of a

conductor, * * * or other such servant complained of, were said or committed in the usual line of duty, while, for instance, scrutinizing tickets and determining the right to travel, excluding offenders and trespassers, and enforcing, or pretending to enforce, the carrier's rules aboard the vehicle; and this, whether the transportation of passengers be by land or water."

Having thus considered a portion of tne elementary authorities relating to this question, we will now consider a few of the many decided cases relating to the same subject. In *Chamberlain* v. *Chandler* (3 Mason, 242, 245), Judge STORY, who delivered the opinion of the court, in discussing the duties, relations and responsibilities which arise between the carrier and passenger, said: "In respect to passengers, the case of the master is one of peculiar responsibility and delicacy. Their contract with him is not for mere ship room, and personal existence, on board, but for reasonable food, comforts, necessaries and kindness. It is a stipulation, not for toleration merely, but for respectful treatment, for that decency of demeanor, which constitutes the charm of social life, for that attention, which mitigates evils without reluctance, and that promptitude, which administers aid to distress. In respect to females, it proceeds yet farther, it includes an implied stipulation against general obscenity, that immodesty of approach which borders on lasciviousness, and against that wanton disregard of the feelings, which aggravates every evil, and endeavors by the excitement of terror, and cool malignancy of conduct, to inflict torture upon susceptible minds. * * * It is intimated that all these acts, though wrong in morals, are yet acts which the law does not punish; that if the person is untouched, if the acts do not amount to an assault and battery, they are not to be redressed. The law looks on them as unworthy of its cognizance. The master is at liberty to inflict the most severe mental sufferings, in the most tyrannical manner, and yet if he withholds a blow, the victim may be crushed by his unkindness. He commits nothing within the reach of civil jurisprudence. My opinion

is, that the law involves no such absurdity. It is rational and just. It gives compensation for mental sufferings occasioned by acts of wanton injustice, equally whether they operate by way of direct, or of consequential, injuries. In each case the contract of the passengers for the voyage is in substance violated ; and the wrong is to be redressed as a cause of damage." In *Knoxville Traction Company* v. *Lane* (103 Tenn. 376) it was held that an electric street railway company was liable in damages to a passenger for the injury to his feelings by the indecent and insulting language of its employee, upon the ground, not of tort or negligence, but of breach of its contract, that obligates the carrier not only to transport the passenger but to guarantee him respectful and courteous treatment, and to protect him from violence and insult from strangers and from its own employees; that as to the latter, the obligation of its contract is absolute ; and that it selects its agents to perform its contract, and the carrier and not the passenger must assume the responsibility for the acts and conduct of such agents. In *Cole* v. *Atlanta and West Point R. R. Co.* (102 Ga. 474, 477) it was held that it was the unquestionable duty of a railroad company to protect a passenger against insult or injury from its conductor, and that the unprovoked use by a conductor to a passenger of opprobrious words and abusive language tending to humiliate the passenger or subject him to mortification, gives to the latter a right of action against the company. In that case it was said : " The carrier's liability is not confined to assaults committed by its servants, but it extends also to insults, threats, and other disrespectful conduct." In *Goddard* v. *Grand Trunk R. Co.* (57 Maine, 202, 213) it was held that a common carrier of passengers is responsible for the misconduct of his servant towards a passenger. In that case, WALTON, J., delivering the opinion of the court, said : " The carrier's obligation is to carry his passenger safely and properly, and to treat him respectfully, and if he intrusts the performance of this duty to his servants, the law holds him responsible for the manner in which they execute the trust. The law seems to be now

well settled that the carrier is obliged to protect his passenger
from violence and insult, from whatever source arising.
* * * He must not only protect his passenger against the
violence and insults of strangers and co-passengers, but *a
fortiori*, against the violence and insults of his own servants.
If this duty to the passenger is not performed, if this protec-
tion is not furnished, but, on the contrary, the passenger is
assaulted and insulted, through the negligence or the willful
misconduct of the carrier's servant, the carrier is necessarily
responsible," citing *Howe* v. *Newmarch* (12 Allen, 55) ; *Moore*
v. *Fitchburg R. R. Co.* (4 Gray, 465) ; *Seymour* v. *Green-
wood* (7 Hurl. & Nor. 355) ; *M. & M. R. R. Co.* v. *Finney* (10
Wis. 388) ; *Penn. R. R. Co.* v. *Vandiver* (42 Penn. St. 365) ;
*P. & R. R. R. Co.* v. *Derby* (14 How. [U. S.] 468) ; *P., F.
W. & C. Ry. Co.* v. *Hinds* (53 Penn. St. 512) ; *Flint* v. *N.
& N. Y. Transportation Co.* (34 Conn. 554) ; *Landreaux* v.
*Bel* (5 La. [O. S.] 434) ; *B. & O. R. R. Co.* v. *Blocher* (27
Md. 277). The decision in *Southern Kansas R. Co.* v. *Hins-
dale* (38 Kansas, 507) was to the effect that where a conductor,
in ejecting a person from a train, uses insulting or abusive
language, such person may recover damages therefor on account
of the injury to his feelings, but cannot in an action for dam-
ages for his expulsion also receive damages because the words
used tended to bring him into ignominy and disgrace. So in
*Craker* v. *Chicago & N. W. R. Co.* (36 Wis. 657) it was held
that a railroad company is bound to protect female passengers
on its trains from all indecent approach or assault, and where
a conductor on the company's train makes an assault, the com-
pany is liable for compensatory damages. In *Bryan* v.
*Chicago, R. I. & P. R. Co.* (63 Iowa, 464) it was also held
that an action by a passenger on the defendant's road would
lie for injuries sustained from insolent, abusive and offensive
words spoken to her by the conductor. In *McGinnis* v.
*Mo. Pac. Ry. Co.* (21 Mo. App. 399) the decision of the
United States court in *Chamberlain* v. *Chandler* was followed
and the discussion of the court in that case closely followed
the discussion by Judge STORY. In *Spohn* v. *Missouri
Pacific Railway Co.* (87 Mo. 74) the court held that the

company was liable to its passengers for any violence or insult from others while the relation of carrier and passenger existed. (See, also, *Malecek* v. *Tower Grove and Lafayette R. Co.*, 57 Mo. 17; *Lou. & Nash. R. R. Co.* v. *Ballard*, 85 Ky. 307; *Winnegar's Administrator* v. *Cent. Pass. Rway. Co.*, Id. 547; *Sherley* v. *Billings*, 8 Bush, 147; *Eads* v. *Metropolitan Ry. Co.*, 43 Mo. App. 536; *Block* v. *Bannerman*, 10 La. Annual, 1, and *Coppin* v. *Braithwaite*, 8 Jurist, pt. 1, 875.) The duties arising between a carrier and passenger have been several times discussed in this state, as in *Stewart* v. *Brooklyn and Crosstown R. R. Co.* (90 N. Y. 588, 590), where it was said : " By the defendant's contract with the plaintiff, it had undertaken to carry him safely and to treat him respectfully; and while a common carrier does not undertake to insure against injury from every possible danger, he does undertake to protect the passenger against any injury arising from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger.  *  *  *  ' The carrier's obligation is to carry his passenger safely, and properly, and to treat him respectfully, and if he intrusts this duty to his servants, the law holds him responsible for the manner in which. they execute the trust.' " The court then quoted with approval the decision in *Nieto* v. *Clark* (1 Cliff. 145, 149) where it was said : " In respect to female passengers, the contract proceeds yet further, and includes an implied stipulation that they shall be protected against obscene conduct, lascivious behavior, and every immodest and libidinous approach.  *  *  *  A common carrier undertakes absolutely to protect his passengers against the misconduct of their own servants engaged in executing the contract." Subsequently in *Dwinelle* v. *N. Y. C. & H. R. R. R. Co.* (120 N. Y. 117, 125) the same doctrine was held and the foregoing portion of the opinion in the *Stewart* case was quoted and reaffirmed by this court. It was then added : " These and numerous other cases hold that no matter what the motive is which incites the servant of the carrier to commit an unlawful or improper act toward the passenger

during the existence of the relation of carrier and pas-
senger, the carrier is liable for the act and its natural
and legitimate consequences." Again, in *Palmeri* v. *Man-
hattan R. Co.* (133 N. Y. 261, 266) it was held that the cor-
poration is liable for the acts of injury and insult by an
employee, although in departure from the authority conferred
or implied, if they occur in the course of the employment.
In that case the employee alleged that the plaintiff was a
counterfeiter and a common prostitute, placed his hand upon
her and detained her for a while, but let her go without
having her arrested. The action was to recover damages for
unlawful imprisonment accompanied by the words alleged to
have been spoken. This court held she was entitled to recover.
The judge then said : " Though injury and insult are acts in
departure from the authority conferred, or implied, neverthe-
less, as they occur in the course of the employment, the
master becomes responsible for the wrong committed." The
foregoing authorities render it manifest that the defendant
was not only liable to the plaintiff for the money wrongfully
retained by its conductor, but also for any injury she suffered
from the insulting and abusive language and treatment
received at his hands.

This brings us to the consideration of the elements of dam-
ages in such a case, and what may be considered in determining
their amount. Among the elements of compensatory damages
for such an injury are the humiliation and injury to her feel-
ings which the plaintiff suffered by reason of the insulting and
abusive language and treatment she received, not, however,
including any injury to her character resulting therefrom.
She was entitled to recover only such compensatory damages
as she sustained by reason of the humiliation and injury to
her feelings, not including punitive or exemplary damages.
" Damages given on the footing of humiliation, mortification'
mental suffering, etc., are compensatory, and not exemplary
damages. They are given because of the suffering to which
the passenger has been wrongfully subjected by the carrier.
The quantum of this suffering may not and generally does

not depend at all upon the mental condition of the carrier's servant, whether he acted honestly or dishonestly, with or without malice.   But whatever view is taken of this question, it is clear that, where the expulsion is made in consequence of a mistake of another agent of the carrier, as in a case where a previous conductor erroneously punched the transfer check which he gave to the passenger so as to read 2 : 40 P. M. instead of 3 : 40 P. M., and in addition to this, the expulsion was accompanied by insulting remarks made to the passenger in the presence of others, damages may be given, founded on the humiliation and injury to the feelings of the passenger." (Thompson on Negligence, § 3288.)   The same doctrine is laid down in Joyce on Damages (§ 354).   In *Hamilton* v. *Third Ave. R. R. Co.* (53 N. Y. 25), where a passenger was ejected by the conductor, who honestly supposed the fare had not been paid, and no unnecessary force was used, it was held that the act of the defendant's servant, being unlawful, rendered the defendant liable for compensatory damages, including compensation for loss of time, the fare upon another car, and a suitable recompense for the injury done to the plaintiff's feelings.   In *Eddy* v. *Syracuse Rapid Transit R. Co.* (50 App. Div. 109) it was held that where the plaintiff entered a car believing that his transfer was valid and was not negligent in failing to discover that it had been punched erroneously, he was there lawfully and entitled to recover compensatory damages, including the indignity, humiliation and injury to his feelings by the remarks of the conductor and his wrongful ejection from the car.   In *Miller* v. *King* (84 Hun, 308, 310) it was held that the conductor had no right to eject the plaintiff; that his action in doing so was unlawful, and that the plaintiff was entitled to damages for the indignity and humiliation suffered thereby.   (See, also, Sedgwick on Damages § 865.)   In *Jacobs* v. *Third Ave. R. R. Co.* (71 App. Div. 199, 202) it was held that the plaintiff was entitled to recover compensatory damages, which embraced loss of time, the amount which the plaintiff was obliged to pay for passage upon another car, and injury done to his feel-

ings by reason of the indignity which he wrongfully suffered. The same doctrine was held in *Ray* v. *Cortland & Homer Traction Co.* (19 App. Div. 530, 534). (See, also, *Pullman's Palace Car Co.* v. *King*, 99 Fed. Rep. 381, 382.) In *Shepard* v. *Chicago, R. I. & P. R. Co.* (77 Iowa, 54) the court charged the jury, "When a passenger is wrongfully compelled to leave a train, and suffer insult and abuse, the law does not exactly measure his damages, but it authorizes the jury to consider the injured feelings of the party, the indignity endured, the humiliation, wounded pride, mental suffering, and the like, and to allow such sum as the jury may say is right," and it was held that his instruction was not subject to the objection that it authorized an allowance of exemplary damages, because damages may properly be allowed for mental suffering caused by indignity and outrage, and such damages are compensatory and not exemplary. In *Craker* v. *Chicago & N. W. R. Co.* (36 Wis. 657) it was held that in actions for personal torts the compensatory damages which may be recovered of the principal for the agent's act include not merely the plaintiff's pecuniary loss, but also compensation for mental suffering, and that in awarding compensatory damages in such cases no distinction is to be made between other forms of mental suffering and that which consists in a sense of wrong or insult arising from an act really or apparently dictated by a spirit of willful injustice or by a deliberate intention to vex, degrade or insult. In *Cole* v. *Atlanta and West Point R. R. Co.* (102 Ga. 474, 479) it was held that even where there was no actual assault, but the company has failed in its duty to protect its passenger from insult, abuse and ill-treatment, the plaintiff is entitled to recover damages for the pain and mortification of being publicly denounced as a dead beat, and in that case it was said : "While this was a wanton act of commission by a servant of the company, it was also a negligent omission on the part of its servants to perform towards the plaintiff a duty imposed by law upon their master." Humiliation and indignity are elements of actual damages, and these may arise from a sense of injury

and outraged rights in being ejected from a railroad train without regard to the manner in which the ejection was effected, though only done through mistake. (*Louisville and Nashville R. R. Co.* v. *Hine*, 121 Ala. 234.) Where unnecessary violence was used in ejecting a passenger from a train, he is entitled to damages for the direct consequences of the wrong, including as well physical pain as mental suffering resulting from accompanying insults, if any. (*Texas Pacific R. Co.* v. *James*, 82 Tex. 306.) A conductor of a railroad company represents the company in the discharge of his functions, and being in the line of his duty in collecting the fare, or taking up tickets, the corporation is liable for any abuse of his authority, whether of omission or commission. In that case the court charged that " in estimating damages they might take into consideration the indignity, insult and injury to plaintiff's feelings by being publicly expelled," and it was held proper. (*S. K. R. Co.* v. *Rice*, 38 Kansas, 398.) Damages may be properly allowed for mental suffering caused by indignity and outrage, whether connected with physical suffering or not, and such damages are compensatory and not exemplary. (*Shepard* v. *Chicago, R. I. & P. R. Co.*, 77 Iowa, 54.) Where the plaintiff, holding a ticket, was wrongfully threatened with expulsion from the cars, charged with attempting to ride without paying therefor, and paid his fare rather than to be ejected, it was held that he was entitled to recover damages for the humiliation suffered and indignity done him by such action on the part of the conductor. (*Penn. Co.* v. *Bray*, 125 Ind. 229.) Where a passenger is expelled from a train and without fault on his part, he may recover more than nominal damages, although he has suffered no pecuniary loss or received actual injury to the person by reason of such expulsion, and the jury in estimating the damages may consider not only the annoyance, vexation, delay and risk to which the person was subjected, but also the indignity done him by the mere fact of his expulsion. (*Chicago and Alton R. R. Co.* v. *Flagg*, 43 Ill. 364.) A person wrongfully ejected from a train is entitled to recover such damages as he

may have sustained by the delay occasioned by the expulsion, and all the additional expenses necessarily incurred thereby, as well as reasonable damages for the indignity to which he was subjected in being expelled from the train. (*Penn. R. R. Co.* v. *Connell*, 127 Ill. 419.) Where there was a wrongful expulsion of a passenger from the car, although unaccompanied by any physical force or violence, it is actionable, and in such a case the sense of wrong suffered and the feeling of humiliation and disgrace engendered is an actual damage for which the injured party may recover compensation, such damages being compensatory and not exemplary. (*Willson* v. *Northern Pacific R. R. Co.*, 5 Wash. 621.) (See, also, *G. C. & S. F. R. Co.* v. *Copeland*, 17 Tex. Civ. App. 55 ; *L. N. A. & C. Ry. Co.* v. *Goben*, 15 Ind. App. 123 ; *Cooper* v. *Mullins*, 30 Ga. 146 ; *H. S. Railroad Co.* v. *Deloney*, 65 Arkansas, 177 ; *A., T. & S. F. Railroad Company* v. *Dickerson*, 4 Kansas App. 345.)

After this somewhat extended review of the authorities bearing upon the subject, we are led irresistibly to the conclusion that the defendant is liable for the insulting and abusive treatment the plaintiff received at the hands of its servant; that she is entitled to recover compensatory damages for the humiliation and injury to her feelings occasioned thereby, and that the trial court erred in directing a verdict for the plaintiff for twenty cents only and in refusing to submit the case to the jury.

The judgments of the Appellate Division and trial court should be reversed and a new trial granted, with costs to abide the event.

Gray, J. (dissenting.) I dissent; because I think it is extending unduly the doctrine of a common carrier's liability in making it answerable in damages for the slanderous words spoken by one of its agents.

Bartlett, Haight and Cullen, JJ., concur with Martin, J.; Parker, Ch. J., and O'Brien, J., concur with Gray, J.

Judgments reversed, etc.