### LIPMAN v. ATLANTIC COAST LINE R. CO.

#### (93 S. E. 713.)

1. CARRIERS—CARRIAGE OF PASSENGERS—LIABILITY FOR TORTS OF AGENTS.—A carrier of passengers is liable for the torts of the agents selected by him to perform the contract of carriage when they are committed in the performance of their duty, and the tortious conduct of a conductor need not be participated in, authorized, or ratified by the railroad to render the latter liable.

2. CARRIERS—CARRIAGE OF PASSENGERS—INSULT BY CONDUCTOR—JUSTIFICATION.—Where a passenger on a railroad train, when the conductor came to collect his fare, tendered him the cash fare to a point where the train was scheduled not to stop, and told him that as soon as the train reached such point he would pay the cash fare from that point to destination, there was nothing in the conduct of the passenger which justified the conductor in using insulting language to him, as by calling him a lunatic.

3. CARRIERS—DAMAGES—CARRIAGE OF PASSENGERS—VIOLATION OF RIGHTS AS PASSENGER—DEFENSE.—If a railroad passenger tendered the conductor cash fare to a point where the train did not stop merely to provoke an altercation, to make a case against the road, it was matter of defense and in mitigation of damages, even if his technical rights as a passenger were violated by the conductor.

4. CARRIERS—MENTAL SUFFERING—PHYSICAL INJURY.—A carrier was liable for mental suffering, inflicted upon a passenger by the conductor, who wrongfully used insulting language to the passenger, even in the absence of physical injury.

Before PEURIFOY, J., Ridgeland, July, 1916. Reversed.

Action by Solomon Lipman against the Atlantic Coast Line Railroad Company. From a judgment of dismissal, plaintiff appeals.

FOOTNOTE.—See note to this case in 85 Central Law Journal 339, on insulting language by carrier's servant as sole predicate for damages, and the following cases there noted: *Gillespie v. Brooklyn Heights R. R. Co.*, 178 N. Y. 347, 70 N. E. 857, 66 L. R. A. 618, 102 Am. St. Rep. 503; *Chamberlain v. Chandler*, 3 Mason 342, 345, Fed. Cas. 2575; *Cole v. Atlanta etc. R. R. Co.*, 102 Ga. 474, 31 S. E. 107; *Sheppard v. Chicago etc. R. Co.,* 77 Iowa 34, 41 N. W. 564; *Knoxville Traction Co. v. Lane*, 103 Tenn. 376, 53 S. W. 557, 46 L. R. A. 549.

*Mr. H. Klugh Purdy,* for appellant, cites: 121 U. S. 637; 93 S. C. 533; Ann. Cas. 1914a, 17; 16 Am. Rep. 40; 67 S. E. 1103; 80 Md. 23; 26 L. R. A. 220; 130 Ala. 334; 54 L. R. A. 752; 206 Mass. 477; 30 L. R. A. (N. S.) 1046; 103 S. C. 327.

*Mr. W. Huger FitzSimons,* for respondent, cites: *As to interstate fares:* 90 S. C. 517; 32 I. C. R. 773; 95 S. C. 427; 100 S. C. 284, 292; 101 S. C. 11; 90 S. C. 517; 100 S. C. 292; 95 S. C. 427; 101 S. C. 11. *Stopping places:* 75 S. C. 355; 82 S. C. 483; 207 U. S. 328. *Passenger refusing to pay the lawful fare a trespasser:* 38 S. C. 1; 90 S. C. 187; 15 Gray 20; 77 Am. Dec. 347. *No actual damage alleged:* 101 S. C. 20; 105 S. C. 147; 121 U. S. 649. *No duty to trespasser:* 23 S. C. 531; 49 S. C. 17; 57 S. C. 243; 63 S. C. 46; 64 S. C. 24 and 553. *Mental anguish unconnected with physical injury:* 78 S. C. 559; 68 S. C. 101; 81 S. C. 322; 82 S. C. 478; 84 S. C. 15; 57 S. C. 330; 104 S. W. 159; 84 Ark. 42; 13 L. R. A. (N. S.) 159; 95 S. W. 794; 104 S. W. 554; 116 Mo. 617; 22 S. W. 554; 116 S. W. 192; 127 S. W. 707; 29 Ohio St. 126; 23 Am. Rep. 729. *Wilful conduct of conductor unauthorized by master:* 105 S. C. 287; 97 S. C. 152; 147 U. S. 101.

*Mr. W. N. Heyward,* also for respondent.

September 26, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This is an action for damages for mental anguish caused by insulting language addressed to plaintiff by the conductor of the train on which plaintiff was a passenger. No other injury is alleged. Defendant demurred for insufficiency.

Plaintiff alleges that he bought a ticket and got aboard defendant's train from Savannah, Ga., to Ridgeland, S. C.; that Monteith, Ga., was a station at which that train was not scheduled to stop; that when the conductor came to collect his fare, he tendered him the cash fare to Monteith, and told him as soon as the train reached Monteith he would pay the cash fare from that point to Ridgeland; that the conductor refused to accept the fare so tendered, and threatened to eject him, and, to prevent his ejection, he gave the conductor his ticket; that, after accepting his ticket, the conductor told him, in a rude and angry manner, in the presence of other passengers, that he was a lunatic and his place was in a lunatic asylum, and that he (the conductor) would be glad to give him two black eyes if he were off duty; that said language was uttered in malice and with intention to humiliate plaintiff, injure him in his feelings and reputation, and hold him up to the scorn of other passengers; and that it had the intended effect, to plaintiff's damage $2,999.

There are four grounds of demurrer: (1) Because the conduct of the conductor was not participated in, authorized, or ratified by defendant; (2) because the conductor's language was not the proximate cause of the injury complained of, but same was caused by plaintiff's own conduct in attempting to ride on cash fare to a station at which he knew the train did not stop, and knew, therefore, that the conductor could not lawfully accept the fare tendered, and by his own violation of the contract made with defendant under which he gained admittance to the train, and in refusing to surrender his ticket until threatened with expulsion; (3) because the language complained of was provoked by plaintiff's own misconduct in attempting to do an unlawful thing; (4) because the mental anguish alleged was unaccompanied by any physical injury.

The Circuit Court sustained the demurrer and dismissed the complaint on the grounds that plaintiff's conduct provoked the language complained of, and that there was no

allegation of actual damage, presumably because there was no allegation of physical injury.

The first ground of demurrer was not pressed in the Court below nor in this Court. Clearly it is untenable; for it is well settled that a carrier of passengers is liable for the torts of the agents selected by him to perform the contract of carriage when they are committed in the performance of that duty.

The second and third grounds involve the same point. They are also untenable. There is nothing in the allegations of the complaint which justifies the use of insulting language to plaintiff. We are not informed why he wanted to pay cash fare instead of using his ticket. We cannot indulge in the speculation, which we are asked to do by defendant, that his purpose was merely to provoke an altercation with the conductor to make a case against the railroad company.

If that be true, it is matter of defense, and in mitigation of damages, even if his technical rights as a passenger were violated. But he may have had what appeared to him good and sufficient reasons for wanting to pay his fare in cash; and, although the conductor may have been right in refusing to accept it as tendered, there is nothing in the simple offer made that would justify the conductor in insulting him any more than the refusal of his offer would have excused an assault by him upon the conductor. Moreover, the insulting language is alleged to have been used after plaintiff had given and the conductor had accepted his ticket, and his right as a passenger had become settled. From that time on provocation for harsh language on account of what had previously occurred, and for what the conductor may have thought a foolish, or even an unlawful request was ended.

The fourth ground of demurrer is based upon the broad proposition that a carrier is not liable for mental suffering

inflicted upon his passengers by his servants, in the absence of physical injury. Otherwise stated, the contention amounts to this: Unless some physical injury is done, a carrier or his servants may insult, abuse, or apply to a passenger offensive and opprobrious epithets, and hold him up to the ridicule and contempt of his fellow passengers; and may use, or permit others to use, profane or obscene language in the presence of cultivated and refined women, and subject them to wanton approaches, with impunity. This partial statement of the consequences of such a rule is enough to show that its application to the relation of carrier and passenger would be intolerable and a reproach to the law of any civilized State.

Defendant cites decisions of this Court in which the rule relied upon was so unqualifiedly stated, but overlooks the principle, univerally recognized and applied in the interpretation of judicial decisions, that the statement of a rule by the Court must be understood as applicable to the facts of the case under consideration, and fails to note the difference between the relation of the parties or the facts of those cases and this case. Examination of the cases cited will show that the principle was applied in some other relation than that of carrier and passenger, or in some other phase of that relation, and also that they were based on allegations or proof of negligence only. There are many actions in which the rule stated does not apply. In libel, slander, malicious prosecution, breach of promise of marriage, and others that might be mentioned, damages for mental suffering are recoverable, although no physical injury is inflicted. There are many decisions of this Court in which it has been held, expressly in some and impliedly in others, that damages may be recovered for mental suffering alone, when that injury was inflicted recklessly, wilfully, wantonly, or maliciously. Even before the mental anguish statute in telegraph cases, this Court held that damages are recoverable for mental anguish alone, caused by reckless, wilful or mali-

cious acts or omissions in the handling of telegrams.   *Lewis
v. Tel. Co.*, 57 S. C. 325, 35 S. E. 556; *Butler v. Tel. Co.*,
62 S. C. 222, 40 S. E. 162, 89 Am. St. Rep. 893.

For reasons that need not be stated here, the relation
between carrier and passenger involves special and peculiar
obligations and duties, differing in kind and degree from
those of almost every other legal or contractual relation.
On account of the peculiar situation of the parties, the law
implies a promise and imposes upon the carrier the corre-
sponding duty of protection and courteous treatment.
Therefore, the carrier is under the absolute duty of protect-
ing his passengers from assault or insult by himself or his
servants.

The result of the ruling cases on the subject is thus stated
in 4 R. C. L. 1174, 1175:

"Passengers do not contract merely for transportation,
but have the right to be treated by the servants and agents
of the carrier with kindness, respect, courtesy and due con-
sideration, and to be protected against insult, indignity, and
abuse from such servants and agents, and it is generally
held that the use by an employee of abusive or insulting lan-
guage, or rude and discourteous conduct on the part of such
employee, toward a passenger, gives to the passenger a right
of action against the carrier for damages.   The rule applies
with special strictness in the case of abusive or insulting lan-
guage used by an employee of the carrier toward a woman
passenger.   In the case of a woman, her contract of passage
embraces an implied stipulation that the corporation will
protect her against general obscenity, immodest conduct, or
wanton approach.   The circumstances that the insult com-
plained of was the result of mistake on the part of the
employee will not defeat a recovery; and while the circum-
stances surrounding the occurrence may be shown, and if
the abuse or insult was brought about by the misconduct of
the passenger the jury may consider that in mitigation of
damages, nevertheless the passenger is entitled to recover at

least nominal damages.   While it is usually held that it is immaterial that mental anguish constitutes the only damage suffered by the passenger, since to prescribe the duty of protection from insults and indignities, and yet to hold the carrier immune from liability for the only consequence that can ordinarily result therefrom, viz., mental suffering, would be simply a contradiction in terms, yet the right of a passenger to recover against the carrier for the rude and insulting language of the carrier's servant has been denied in some jurisdictions in cases where mental suffering constituted the only injury suffered by the passenger.   An imperative manner and form of speech on the part of the carrier's employee in addressing a passenger is not actionable under the rule as to insulting language.   And, in order to sustain the action, the wrong must be found in a servant's language and manner, and not in the plaintiff's opinion of their propriety, or in the epithets and adjectives by which the plaintiff characterizes them."   See, also, 10 C. J., 895, 896.

Examination of the many cases cited in the notes of the valuable works above referred to will show that the overwhelming weight of reason and authority supports the conclusion which this Court has reached, and, though some authority is cited to the contrary, it is based upon unsatisfactory reasoning.

The following cases show that the majority rule obtains in the Federal Courts.   In *Nieto v. Clark,* 1 Cliff. 145, Fed. Cas. No. 10262, Mr. Justice Clifford, then an Associate Justice of the Supreme Court, said:

"Passengers are under obligation to conform to the reasonable regulations of the vessel, and to a certain extent owe obedience to the commands of the master, as the necessary consequence of the relation they bear to the ship during the voyage; and they are also entitled to respectful treatment from the master and other officers in charge of the vessel, and may well claim to be exempt from insult and personal violence from the crew.   They do not contract merely for

shiproom and the right to personal existence, but for suitable food, comforts and necessaries, and for protection against personal rudeness from all those in charge of the vessel, and every wanton interference with their persons."

See, also, *Pendleton v. Kinsley,* 3 Cliff. 416, Fed. Cas. No. 10922; *New York etc. Ry. Co. v. Bennett,* 50 Fed. 496, 1 C. C. A. 544; *Steamboat Co. v. Brockett,* 121 U. S. 637, 7 Sup. Ct. 1039, 30 L. Ed. 1049.

Moreover, the question cannot be regarded as an open one in this State. While it is true that, in the cases below cited, there were other elements of injury, nevertheless it was held that damages for mental suffering alone are recoverable of a carrier for an unprovoked insult to a passenger by the carrier's agent.

In *Cave v. Ry.,* 94 S. C. 282, 287, 77 S. E. 1017, 1020 (L. R. A. 1915b, 915, Ann. Cas. 1915a, 1065), it was said:

"The Courts have not defined, and it would be unwise to attempt to define accurately, the kind of language which must be used by a conductor to a passenger before liability will be imposed upon the carrier. Ordinarily too much depends upon the circumstances, the relation of the parties, the tone and manner in which a thing is said, for any exact definition or rule to be laid down. But there can be no doubt that where a conductor uses language to a passenger which is calculated to insult, humiliate or wound the feelings of a person of ordinary feelings and sensibilities, and it is intended to have that effect, the carrier is liable for the contract of carriage impliedly stipulates for decent, courteous and respectful treatment at the hands of the carrier's servants."

While there was differences of opinion as to whether the language there used was insulting, there was none on the question of liability for the use of insulting language. In *Adams v. Ry.,* 103 S. C. 327, 87 S. E. 1007, L. R. A. 1916d, 1183, every element of damage, except the alleged insulting language used, was eliminated by the decision of this Court,

and the case was remanded for a new trial on that issue alone, which necessarily involved the holding that plaintiff might recover for mental suffering alone caused by insulting language.

Judgment reversed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and GAGE concur in the opinion of the Court.

MR. JUSTICE FRASER, *dissenting.*    I cannot concur in the opinion of·the majority.    As I see it, this Court has clearly held the contrary.    In *Norris v. Railway,* 84 S. C., p. 21, 65 S. E., p. 959, this Court says:

"The law of this State does not allow recovery of damages for mental suffering in the absence of bodily injury, except under the mental anguish statutes with reference to telegraph companies."

It is true in the Norris case the offensive language was used by passengers, but the principle is the same.    .