## LA GASCOGNE.

(District Court, S. D. New York. March 7, 1905.)

SHIPPING—EJECTION OF PASSENGER—BREACH OF CONTRACT MADE BY PASSAGE. TICKET.

Libelant, while in New Orleans, was furnished, under a contract, with a steamship ticket from New York to Havre on the respondent vessel, which, at his request by telegram, was extended by the claimant. It appeared that afterwards, at the request of the person who had engaged the passage, the ticket was canceled; but libelant was not notified, and, on his presenting it at the New York office of claimant, it was accepted, and he was assigned a berth, and went on board with his effects. A few minutes before the vessel sailed, libelant was notified that the ticket was not good; and, being unable to then pay the fare demanded, he was ejected from the vessel, with a part of his baggage. *Held*, that under

such facts he was entitled to remain, and his ejection was wrongful, and that he was entitled to recover $500 for the indignity put upon him, together with his expenses during the time he was delayed, and the cost of a new ticket.

In Admiralty. Suit by passenger to recover damages for ejection from steamship.

Charles Le Barbier, for libellant.

Edward K. Jones, for claimant.

ADAMS, District Judge. This action was brought by Eugene Roumegoux to recover from the steamship La Gascogne, the damages alleged to have been suffered by him, to the extent of $25,000, in consequence of his expulsion from the steamship as she was about sailing, at 10 o'clock in the morning of the 31st day of January, 1901. The claimant, La Compagnie Generale Transatlantique, alleges that the ticket which the libellant presented to the company, and in accordance with which he received accommodation on the steamship, was not good because issued by a clerk in the claimant's office, who was without authority, and that the expulsion was without undue force and justified.

The testimony shows that the libellant, a lyric artist and stage manager, was engaged by one Henry Berriel of New Orleans as stage manager for a season of French Opera, beginning December 4, 1900. On December 21st 1900, the contract, having been found unsatisfactory, was cancelled by mutual consent, and provision made that the services were to end on the 23rd of December, 1900. It was also provided that a certain sum of money should be paid to the libellant and transportation furnished him from New Orleans to Paris, by rail to New York and thence by the steamship L'Aquitaine to Havre and by rail from there to Paris. On December 31st 1900, tickets were delivered to the libellant for the railroad transportation and a ticket for the steamship La Gascogne, instead of L'Aquitaine. These tickets were accepted by the libellant and the same day he sent a telegram to the agent of the claimant in New York asking that the time of the steamship ticket be extended to cover all of January. Later in the day, he called at the claimant's office in New Orleans and received a reply telegram granting his request. He also succeeded in having the time of his railroad transportation to New York extended. He remained in New Orleans until January 28th when he started for New York and arrived there about noon of January 30th. The next morning he went to the office of the steamship company and exhibited his original ticket and the telegram extending the same to cover all January. He was referred to an employee, one Dewar, who after examining ticket and telegram, wrote across the face of the ticket "Seen, good for La Gascogne, sailing January 31, 1901. Berth 173." The libellant then went to the steamship, and had a trunk checked and his other baggage, consisting of a small trunk, valise and hat box, brought to the state-room in which the assigned berth was situated. After placing in the room from his state-room baggage a few articles for personal use, he went on deck. This was about 9 o'clock and as

the steamship was scheduled to sail at 10 o'clock, he walked the deck with a friend, who had come to see him off. Shortly before sailing time, Dewar came up to him, saying the purser wished to see his ticket and the libellant delivered it to him. Dewar went off but returned very shortly saying the ticket was not good and the libellant must either pay his passage or go ashore. The libellant protested and demanded the return of his ticket which was refused. He then offered a draft he had in his pocket, drawn by a New Orleans bank on Le Comptoir a'Ecompte of Paris, payable to his order for a sum in excess of the price of the passage, saying, however, that he reserved the right to adjust the matter subsequently with the main office of the steamship company in Paris. The offer was refused, his ticket was returned to him, and he was removed from the steamship, with his cabin baggage.

He claims that the removal was accomplished just as the steamship was sailing, with considerable violence, by two sailors, one seizing him by each shoulder. The claimant contends that no force was used but that he went off quietly and his baggage was taken with him, excepting the trunk which had been taken into the hold. This was carried to France and subsequently delivered to him there. He claims that he was left in New York with insufficient clothing, even his overcoat having been carried away, so that he was obliged to expend about $50 to obtain requisite clothing for use in New York, while he was necessarily detained there awaiting the receipt of funds from France.

After his expulsion from La Gascogne, he consulted an attorney in New York and through him an offer was obtained from the claimant to forward him on the steamship La Bretagne, sailing from New York February 7th 1901, but this offer the libellant declined lest he should compromise in some way his right of action for the expulsion. He did not sail until February 28th 1901, when he took passage in La Gascogne, paying for his ticket.

Upon his return to Paris, the libellant instituted proceedings against the claimant but these were discontinued by him, a right to prosecute elsewhere being reserved. Costs were adjudged against him in such action to the extent of $50.

The action was subsequently brought in this court.

The claimant's defence in substance is, that Berriel, who had some arrangement with the claimant for furnishing transportation to his employees, gave an order on it for a 2nd class passage on L'Aquitaine, with a provision that if the libellant missed that steamship, the claimant should furnish him with a ticket for the following one. It is contended that Berriel intended that the time for departure should be limited to January 3rd, and notified the claimant that if it were extended beyond such time, he would not pay for the passage and that notwithstanding the limitation, the libellant planned to outwit Berriel and remain in this country to suit his convenience. It is further contended that the extension obtained for all of January was without Berriel's knowledge, and that when he heard of it, he repudiated the arrangement as far as he was concerned. On the 4th of January, the claimant telegraphed to its

·New Orleans agent, that the libellant's passage was cancelled and directed the agent to return the ticket.

The libellant contends that he was never notified that his ticket was cancelled. Two witnesses for the claimant testified that he was advised of such action. The testimony of the libellant was not credible in all respects but I think in this particular that he was right. His actions tend strongly to support his contention that he did not know there would be any difficulty about his taking the later passage, as far as Berriel was concerned, and the claimant was at least negligent in not taking proper steps to carry out Berriel's wishes.

The claimant also contends that the clerk in its office who handed the ticket to the libellant was acting without authority, but he was apparently proceeding within the scope of his duties when he issued the ticket and it seems to me that the libellant was entitled to the passage. In any event, the ticket was accepted, the libellant duly installed as a passenger on the vessel and acquired the rights incident thereto. The contract was in force when the libellant was expelled from the vessel.

It only remains to consider the question of damages.

The libellant having been deprived of his ticket and compelled to purchase another, is entitled to be reimbursed in such respect. It appears that he was compelled to pay $50 for his passage. This amount with interest he should recover.

The libellant was undoubtedly humiliated and his feelings injured by the tortious acts of the agents of the vessel. For such wrongs, I consider that he should be paid $500. I see no necessity for going beyond these sums in arriving at the libellant's damages. I assess the sum of $500, not for any violence done to him but because of the indignity he suffered in being obliged to leave the vessel, when he was entitled to be carried on her.

The libellant was offered passage by the claimant and could have gone to France on the steamer sailing February 7th. He refused to go then, because, he says, the offer to send him did not include reparation for the injury done him, but his going would not have deprived him of the right to seek such redress as the circumstances warranted. I do not think he should be allowed for what happened thereafter, even if his claim in such respect can be substantiated, which the evidence, in connection with his bearing, does not indicate. His testimony as to what he could have earned is very indefinite and unsatisfactory and, in my judgment, he will be amply compensated for the injury he has suffered by the above allowance, excepting for the necessary disbursements made in New York between the day of his expulsion and the time he might have sailed on the 7th of February. The testimony shows that he spent from $60 to $75. The former sum is the proper one to allow, with interest.

Decree for the libellant for $610, with interest on $50 from February 28th 1901, the date of the purchase of his new ticket, and on $60 from February 7th 1901. From the $610 herein provided for, the claimant is entitled to a reduction of $50, with interest, the amount of the judgment recovered against the libellant in Paris in his action there. During the proceedings here, it was stipulated in

court that if any recovery should be allowed to the libellant, the claimant would be entitled to offset this amount.

Decree for libellant in conformity herewith, to be settled upon one day's notice.