## THE WESTERN STATES.

### (District Court, W. D. New York. March 18, 1907.)

1. ADMIRALTY—PROCEDURE—JURY TRIAL.

Under Rev. St. § 566 [U. S. Comp. St. 1901, p. 461], which provides that, in admiralty or maritime causes relating to contracts or torts arising on the Great Lakes, "the trial of issues of fact shall be by jury when either party requires it," the verdict of the jury is merely advisory.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, § 595.]

2. SHIPPING—INJURY OF PASSENGER—LIABILITY OF VESSEL.

It is the duty of a vessel to protect a passenger from harm or injury through the acts of employés or other passengers, and a failure to do so renders it liable for the resulting damages.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 541, 542.

Duty of carrier to protect passenger from injury by fellow passenger, see note to Meyer v. St. Louis, I. M. & S. Ry. Co., 4 C. C. A. 231.]

3. SAME—AGGRAVATION OF DAMAGES—DISRESPECTFUL TREATMENT BY OFFICERS.

It is the duty of a vessel to accord to a passenger respectful treatment by its officers and servants, and disrespectful treatment by a master of a woman passenger, on her making complaint that she had been assaulted and robbed in her stateroom, may properly be considered in aggravation of the damages.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 541, 542.]

4. DAMAGES—PERSONAL INJURY—EXCESSIVE AWARD.

An award by a jury of $15,000 damages against a vessel for an assault made on a woman passenger in her stateroom by an unknown assailant, and subsequent acts of aggravation by the officers, *held* excessive under the evidence, and the amount reduced to $5,000.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 357, 367.]

In Admiralty. Libel in rem. Trial with jury under Rev. St. § 566 [U. S. Comp. St. 1901, p. 461].

Bushnell & Metcalf (J. H. Metcalf and Patrick F. King, of counsel), for libelant.

Rogers, Locke & Babcock (Louis L. Babcock and Evan Hollister, of counsel), for respondent.

HAZEL, District Judge. Three questions of fact were submitted to the jury: The first, whether the steamer Western States was negligent in failing to provide a bolt, lock, or other device to the stateroom door to enable the libelant to securely fasten such door and prevent intrusion; second, whether the respondent maintained a proper and sufficient watch or patrol to protect the libelant, a passenger; and, third, whether, after the assault upon the libelant by an employé of the ship, she was treated discourteously by the master of the vessel, by the special watchman, or both such master and watchman, to whom she complained of the assault. The verdict of the jury was general, but, from the amount of damages awarded ($15,000), the presumption that the jury found against the vessel, upon all the questions submitted to them, may be indulged in.

Since the verdict was rendered, some confusion has arisen as to whether the verdict is ·binding· upon the court as in a common-law action or merely advisory. ·The proctors for the libelant, after the verdict was announced by the jury, moved the court for a decree thereon, and, the motion being held in abeyance, they, on a subsequent day, requested leave to withdraw the same on the ground that the court was bound by the conclusions of the jury, and the libelant had the legal right to enter the decree in accordance therewith without application· to the court. The court, however, being ·of· the opinion that the verdict was ·simply advisory, denied the motion of· the libelant, to which ruling she duly excepted. Under the interpretation by Judge ·Brown, in The Empire (D. C.) 19 Fed. 558, of the statute authorizing trials by jury in admiralty where the matters relating to contract or tort arose on the Great Lakes, the verdict of the jury is merely advisory, and may be disregarded by the court. This has been my uniform rule in other admiralty trials with jury. In this connection it may be interesting to note that trials in admiralty with jury, even where the tort arose on the high seas, though long since fallen into disuse, appear not to have been formerly wholly unknown. In 1 Abbott on Shipping, p. 284, it is stated: "It appears, from the Black Book of the Admiralty, that jurors were formerly summoned to the admiralty."

I ·do not deem it necessary to restate the facts of· the case, and will briefly indicate my affirmance or disaffirmance of the. conclusions of the jury. I concur in the evident conclusion that the steamer did not have a sufficient watch or patrol to adequately protect the libelant at night while asleep in her state room. It was the vessel's contract to carry the libelant, a passenger, for hire, from Buffalo to Detroit safely and ·without harm coming to her from passengers or employés of the vessel. Upon this proposition the authorities abound, and the citation of a few only is necessary. Chamberlain v. Chandler, 3 Mason, 242, Fed. Cas. No. 2,575; Steamboat v. Brockett, 121 U. S. 637, 7 Sup. Ct. 1039,.30 L. Ed. 1049; The City of Panama, 101 U. S. 462, 25 L. Ed. 1061; Flint v. Norwich, etc., Fed. Cas. No. 4,873; The Yankee, Fed. Cas. No. 18,124; Gillespie v. Brooklyn Heights R. R. Co., 178 N. Y. 347, 70 N. E. 857, 66 L. R. A. 618, 102 Am. St. Rep. 503, and cases cited.

The vessel did not fail in her duty to the libelant in not providing a bolt or inside lock to the door. The evidence showed that the lock attached· to the stateroom door was the usual and ordinary lock upon lake passenger steamers, and, though its use was criticised by libelant, it was not claimed to be defective or insufficient for the purpose intended.

The law is unquestionably well settled that the carrier, in addition to the obligations above mentioned which it owes to the passengers, ·must also use the utmost care to accord to a passenger respectful treatment by its ·officers and servants. Upon the facts elicited, the jury was warranted in finding that after the assault the libelant, who made report thereof to the master of the vessel and to the special watchman, was treated disrespectfully. The ·skeptical manner in which her complaint that she had been chloroformed, ·assaulted, ·and robbed was

listened to, together with the evident lack of sympathy displayed, without doubt augmented her sufferings. Such tortious acts following the assault upon her were a breach of the contract, and were properly considered by the jury in aggravation of damages. The La Gascogne (D. C.) 135 Fed. 577; The Willamette Valley (D. C.) 76 Fed. 838; Gillespie v. Brooklyn Heights R. R., supra.

The damages awarded by the jury were excessive, and would seem to indicate either a feeling of prejudice, or that the jury did not fully understand the instructions of the court pointing out that, however painful were the sufferings of libelant, she was not entitled to recover punitive damages. A careful consideration of the testimony upon the subject of the injuries sustained, and the subsequent acts of the master and the special officer in aggravation thereof, will not permit me to confirm the action of the jury in this regard. The evidence shows that the libelant was of the age of 51 years, and that, after the assault, she suffered from intermittent nervous attacks. She was not confined to her bed, nor did she deem it necessary to have medical attendance. Dr. Krauss, basing his testimony upon an examination of the libelant shortly before the trial, states that he discovered a marked exaggeration of the muscular reflexes of the body, which indicated a hypersensitive condition of the nervous system; but in other respects she seemed to him reasonably strong and healthy. He testified that her nervous condition was owing to the injuries complained of, and was "more or less permanent."

In my judgment the amount of the recovery should be reduced to $5,000, a liberal reward; but, considering the pain and anguish of mind and body, together with the humiliation which the libelant suffered on account of the discourteous treatment of the ship's servants, it is, however, thought a just compensation for the injuries sustained.