BERMAN BARAD, Plaintiff, *v.* NEW YORK RAPID TRANSIT COR-
PORATION, Defendant.

Municipal Court of New York, Borough of Manhattan, First District,
April 5, 1937.

*William Roth*, for the plaintiff.

*George D. Yeomans [Benjamin Eisler* of counsel], for the defendant.

LEWIS (JOHN M.), J. In this action plaintiff sues the defendant, admittedly a common carrier and the operator of a subway railroad in Brooklyn, N. Y., as the aftermath of an occurrence in which the plaintiff claims he was, without cause or provocation, assaulted by defendant's employee while a passenger on its subway train.

While it appeared that the issues in the action would be tried on the proofs of both parties, the defendant elected to rest at the close of the plaintiff's case and moved for a directed verdict. Plaintiff joined in this motion, thus leaving the issues to be determined by the court in the light of the pertinent law.

As the record stands, no proof having been adduced in behalf of the defendant, the facts testified to by the plaintiff and his witnesses must be taken to be true, and no reason appears for not accepting the plaintiff's version in the absence of satisfactory contradiction or gross improbability.

Those facts are: Plaintiff is a business man of apparent respectability, who was a passenger in a subway train operated by the defendant, a common carrier, having paid the fare prescribed by the defendant for passage, in the usual course.

In this connection plaintiff alleges that in consideration of this fare so paid, the defendant " promised and agreed safely to carry the plaintiff and to take appropriate precautions for his care and safety during the course of such passage." This allegation is in form denied, and while, of course, no proof appears of specific contract, the court believes that the allegation is a fair and proper statement of the contractual engagement which arises by operation of law under the authorities hereinafter referred to. It may, therefore, be deemed a non-traversable allegation once the facts above referred to have been established.

As the train in which the plaintiff was riding approached the Brighton Beach, Brooklyn, subway station, the defendant's servant, an employee apparently in charge of the operation of the doors of said train, was observed by the plaintiff running through the aisle, and as he came abreast of the plaintiff appears to have fallen to the floor of the train. There is no conclusive proof concerning the cause of this fall, the plaintiff testifying that he believed that the employee tripped over the base of a stanchion in the car. The defendant, while intimating in cross-examination that the employee had tripped over the leg or foot of the plaintiff, without indicating whether it is claimed that this result was intentional or unintentional on the part of the plaintiff, adduced no proof in support thereof other than the denial by the plaintiff of such fact and the admission by the plaintiff that the employee had, as he arose, accused the plaintiff of tripping him. On this state of the record the court must, of course, assume that plaintiff's testimony is true, and, in fact, no reason appears why the court, as the finder of the fact, should be inclined to believe that the plaintiff had committed any such act.

Upon arising defendant's servant assaulted and beat the plaintiff, striking at him and inflicting injury, the full detail of which is not here important, which the plaintiff sought to ward off by shielding his head with his arm, and by protesting to the defendant's servant. Some corroboration of the factum and the extent of the injuries was furnished by the testimony of plaintiff's physician.

We have, therefore, the given facts of the plaintiff's status as a passenger, the defendant's status as a common carrier, the implied fact of the contract of carriage, an assault by an employee charged with the task of management of defendant's train, and an absence of any provocation on the part of the plaintiff.

At the outset of the trial defendant's counsel vigorously objected to the jurisdiction of the court upon the theory that this is an action to recover damages for an assault over which, under section 6 of the Municipal Court Code, this court does not have power of disposition. That section, among other things, grants jurisdiction to the court in an action to recover damages " for a personal injury * * *, except actions to recover damages for assault, battery." At first blush, and perhaps as an original proposition, it might be believed that this specific legislative mandate would foreclose inquiry into the cause of action here sought to be asserted by the plaintiff. However, the matter of jurisdiction is not one of original instance here, having been finally decided adversely to the position taken by the defendant, both by the Appellate Term and by the Court of Appeals of this State.

The complaint in this action alleges, as hereinbefore pointed out, that "In consideration of the sum of Five (5¢) cents paid by the plaintiff to the defendant, upon the plaintiff becoming a passenger on said line hereinbefore referred to, the defendant promised and agreed safely to carry the plaintiff and to take appropriate precautions for his care and safety during the course of such passage and that the plaintiff, while a passenger, was assaulted in violation of the terms of its [defendant's] contract."

In *Busch* v. *Interborough Rapid Transit Co.* (187 N. Y. 388) a state of facts indistinguishable from that here appears. An action was brought to recover damages resulting from an assault of similar character. The question of the jurisdiction of the Municipal Court was not alone raised, but was litigated through the courts until it reached the court of last resort. It was held by the Court of Appeals that the court had jurisdiction for the reason that the action sounded in contract, to recover for breach of the contract of safe carriage, notwithstanding that the breach was an assault, and that, therefore, the action was not to recover *for an assault*, but to recover *ex contractu*. As the court reads the opinion of the Court of Appeals it would appear that the reasoning is as follows:

If a plaintiff sues a defendant alleging that he was assaulted by the defendant, that act gives rise to a remedy on the part of the plaintiff because a tort has been committed and the defendant has acted, quite irrespective of contract or status, as society dictates that he shall not act. Therefore, if the plaintiff were here to sue the employee for the very act here alleged, this court might have no jurisdiction. Plaintiff, however, need not be relegated to the remedy which the law, by implication, gives to one who is assaulted under any circumstances, but may rely upon the affirmative duty imposed on the defendant to protect him and to carry him safely, which the law finds by way of implied contract. In other words, the gravamen of the plaintiff's cause of action, if he chose so to rely, is not the *assault* but the *contract* and the *breach* thereof, notwithstanding that the act by which the contract was breached is an assault.

The Court of Appeals said (at pp. 389 and 390) as follows:

"This action was brought to recover damages for defendant's failure to properly transport plaintiff over its road in the city of New York. The real, substantial element of damages is an alleged assault upon and maltreatment of plaintiff by one of defendant's employees after the former had passed through the gateway on to the platform of one of defendant's stations for the purpose of taking a train, and the sole question is whether the action is one of contract or of tort. This inquiry is of controlling importance,

since the Municipal Court where the cause originated had jurisdiction of an action of the former character and did not have jurisdiction of one of the latter kind.

"I think that the learned Appellate Division correctly held that the action was one in contract and that plaintiff's judgment should be affirmed."

In *Hines* v. *Dry Dock, E. B. & B. R. R. Co.* (75 App. Div. 391) the jurisdiction of the Municipal Court was again upheld with the statement: "The breach of the contract was the misconduct of the servant, which resulted in an assault. But the action is not for an assault within the meaning and purview of the exception relied upon by the defendant." (See, also, *Fallon* v. *Interurban St. R. Co.*, 40 Misc. 687; *Rein* v. *Brooklyn Heights R. R. Co.*, 47 id. 675; *Arkin* v. *Interborough R. T. Co.*, 48 id. 644; *Hart* v. *Metropolitan St. R. Co.*, 65 App. Div. 493; *Baumstein* v. *New York City R. Co.*, 56 Misc. 498.)

The defendant's motions in this case relating to the jurisdiction of the court, therefore, are overruled.

Coming now to the substantive question of liability, defendant urges with great force that it is not liable because the act of its servant cannot be said to have been one in pursuance of his duties and, therefore, that it was an act beyond the scope of his authority. For this proposition there are cited authorities in familiar vein relating to the rule of *respondeat superior*. If the court were to be guided here by the general rule relating to master and servant there would be no question about the fact that a malicious or a willful act on the part of the servant cannot be deemed to be one for which the employer should be held responsible. (*Mott* v. *Consumers' Ice Co.*, 73 N. Y. 543; *Cosgrove* v. *Ogden*, 49 id. 255.) However, none of these authorities is applicable to the legal concept upon which this cause of action is based. To visualize its theory we must again look to the doctrine of the implied contract of safe carriage, and the weight of authority upon this subject is so overwhelming that it would be fruitless for the court to inquire into the rule as an original proposition. The extent of the liability of a carrier under circumstances of this kind is *sui generis* because of the contract of safe carriage, which, as a public utility, a common carrier must be deemed to assume. For that reason all decisions relating to the general rules applicable to the liability of master for servant must be disregarded. There does not seem to be room for reasonable question or doubt that a common carrier is absolutely responsible for any act of violence committed upon the person of a passenger by one of its employees, engaged in his duties, notwithstanding that such act may be willful or malicious on the part of the servant,

unless, of course, the act is caused by the passenger. The latter exception must necessarily be engrafted upon the rule, since otherwise a rule of public policy would make it possible for one to profit from his own wrong. (*Zeccardi* v. *Yonkers R. R. Co.*, 190 N. Y. 389; *Reed* v. *New York & Queens County R. Co.*, 116 App. Div. 709.) So far does this rule go that it may well be read in the light of the extreme rule of liability, which has in many instances been imposed upon a carrier for acts of third persons which it should have prevented.

On the question of absolute liability for such an assault committed upon a passenger, see *Brewster* v. *Interborough Rapid Transit Co.* (68 Misc. 348); *Baker* v. *Brooklyn Union Elevated R. R. Co.* (146 App. Div. 304); *Willis* v. *Metropolitan Street R. Co.* (76 id. 340); *Busch* v. *Interborough Rapid Transit Co.* (187 N. Y. 388); *Dwinelle* v. *New York Central & H.R.R.R.Co.* (120 id. 117); *Stewart* v. *Brooklyn & Crosstown R. R. Co.* (90 id. 588); *Weber* v. *Brooklyn, Queens County & Suburban R. R. Co.* (47 App. Div. 306); *Connell* v. *New York, Ontario & Western R. Co.* (134 id. 231); *Supple* v. *International R. Co.* (208 id. 547), and 10 C. J. 889.

In the *Stewart Case* (*supra*, at p. 591) the Court of Appeals has distinctly said that the ordinary rules which prevail have no application to an action which has at its root the contractual status between carrier and passenger. The Court of Appeals also said without equivocation, disposing thus summarily of the contention here raised by the defendant (p. 592): " It is no defense to say that that failure was the result of the wilful or malicious act of the servant;" and (at p. 594): " The rule applicable to such a case does not apply to the case of an assault committed upon a passenger by a servant intrusted with the execution of a contract of a common carrier."

The Appellate Division, Second Department, has also thus outlined the rule, citing many of the prior authorities (*Weber* v. *Brooklyn, Queens County & Suburban R. R. Co.*, 47 App. Div. 306, at p. 309): " The conductor cannot rightfully assault the passenger *merely because the passenger has insulted him or otherwise provoked him by mere words;* and if he does assault the passenger by reason of such provocation only, unaccompanied by any threats or acts of personal violence, the railroad company will be liable for the consequences of the assault under the well-established rule which protects passengers against the misconduct of a common carrier's servants." (Italics mine.)

The rules laid down in *Dwinelle* v. *New York Central & H. R. R. R. Co.* (120 N. Y. 117) must be deemed to foreclose any consideration of the defense here urged, for the Court of Appeals (at

p. 125 of that opinion) disposed of that line of defense in the following clear language:

"*I need not stop to discuss the contention that the master is not liable for the willful and malicious acts of a servant of a carrier toward or upon a passenger.* The case of *Stewart* v. *B. & C. T. R. R. Co.* (90 N. Y. 588) settles that question against the defendant in this case. In that, Judge TRACY says: ' By the defendant's contract with the plaintiff it had undertaken to carry him safely and to treat him respectfully, and, while a common carrier does not undertake to insure against any injury from every possible danger, he does undertake to protect the passengers against any injury from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger. A common carrier is bound, so far as practicable, to protect his passengers, while being conveyed, from violence committed by strangers and copassengers, and he undertakes absolutely to protect them against the misconduct of its own servants engaged in executing the contract,' or as otherwise therein expressed, ' from an assault committed upon a passenger by a servant entrusted with the execution of a contract of a common carrier.' (*Weed* v. *P. R. R. Co.,* 17 N. Y. 362.)

" These and numerous other cases held that *no matter what the motive is which incites the servant of the carrier* to commit an unlawful or improper act toward the passenger during the existence of the relation of carrier and passenger, the carrier is liable for the act and its natural and legitimate consequences. (*Neito* v. *Clark,* 1 Cliff. 145; *Commonwealth* v. *Power,* 7 Metc. 596; *Goddard* v. *G. T. R.,* 57 Me. 202; 2 Am. Rep. 39; *Craker* v. *C. & N. W. R. Co.,* 36 Wis. 657; 17 Am. Rep. 504; *C. & E. R. R. Co.* v. *Flexman,* 103 Ill. 546.) " (Italics mine.)

Thus we find that both branches of the argument made by the defendant have already been considered by the courts, to wit: (1) The argument predicated upon the normal rule of *respondeat superior,* and (2) the argument that a willful or malicious act must be deemed a private venture on the part of the servant. As the authorities have pointed out, the difficulty with these arguments is that liability is imposed upon the carrier *not* because it stands in the shoes of the employee, so far as representative liability is concerned, but because of its contract safely to carry the passenger. So far do the cases go that we have the doctrine also laid down, as in *Weber* v. *Brooklyn, Queens County & Suburban R. R. Co.* (47 App. Div. 506), that the carrier is liable notwithstanding that the passenger has insulted or otherwise provoked the servant. (See,

also, *Baker* v. *Brooklyn Union Elevated R. R. Co.*, 146 App. Div. 304.)

The defendant in its counsel's brief has discussed various supposititious cases, in which obviously personal acts on the part of the servant are suggested, with the inquiry as to. whether the carrier would be liable therefor. The answer to all of these must be found in the cases cited, to wit: That no matter how malicious or willful the act upon the part of the servant, if it was not caused directly by the passenger's fault, it constituted a breach of the contract of safe carriage. Only an examination of the cases above referred to can demonstrate the extent to which this rule is applied. (See *Supple* v. *International R. Co.*, 208 App. Div. 547, where the act was caused obviously by personal malice, and *Brewster* v. *Interborough Rapid Transit Co.*, 68 Misc. 348, where the passenger appears to have invited the servant to carry out the latter's threat of violence.)

In brief, the rule is simple and clear. It admits, of course, of exceptions necessary to prevent injustice, as in *Zeccardi* v. *Yonkers R. R. Co.* (190 N. Y. 389) and *Reed* v. *New York & Queens County R. Co.* (116 App. Div. 709). Those exceptions do not attenuate the rigor·of the rule otherwise laid down in the cases above cited, that mere provocation on the part of the passenger will not give ground for violation of the contract of safe carriage.

Examining the facts in this case in the light of this pertinent law, it is difficult to see upon what theory the defendant can here escape liability. Without determining whether it would have been sufficient for the defendant to show that the plaintiff had tripped the defendant's servant, the fact remains that no proof thereof was furnished, and the only proof in the record is the denial of that forensic argument. Had proof been established of that fact, then it might have been necessary to inquire into whether the tripping was intentional upon the part of the passenger or accidental, for if it were the latter. it could hardly be considered as giving greater immunity than actual *provocation*, such as appears in some of the cases above cited. The defendant, however, must stand solely and only upon the fact that the defendant's servant, in striking the plaintiff, *charged* him with such act — a charge which we must necessarily find, in the absence of proof to the contrary, to have been unjust, and it, therefore, hardly can be said to take away from the humiliation visited upon the plaintiff. The *ex parte* expression of this state of mind on the part of the servant can hardly be said to be sufficient to defeat a substantive

right. Defendant's argument seems to be based upon the fact that the ascertainment of this state of mind must demonstrate that the servant's act was willful and malicious. Granted that it does demonstrate such fact, the court is unable to distinguish this type of malice and willfulness from the malice and willfulness displayed by the employees in the many cases above cited, in which the carriers have been held responsible.

I hold, therefore, that the defendant is liable to the plaintiff for such damages as may properly be assessed against it.

On the question of the amount of damages, upon the joinder of both parties in the motion for a directed verdict, the court's usual scope is extended to include the power to determine such question as if it were the trier of the fact. (*Brown Paint Co.* v. *Reinhardt*, 210 N. Y. 162.)

Plaintiff is entitled to recover not alone for the injuries sustained by him and the results thereof, but also for humiliation and injury to his feelings. This rule has been laid down in *Gillespie* v. *Brooklyn Heights R. R. Co.* (178 N. Y. 347); *Hamilton* v. *Third Avenue R. Co.* (53 id. 25); *Eddy* v. *Syracuse Rapid Transit R. Co.* (50 App. Div. 109); *Miller* v. *King* (84 Hun, 308, 310); *Jacobs* v. *Third Avenue R. R. Co.* (71 App. Div. 199). In *Gillespie* v. *Brooklyn Heights R. R. Co.* (*supra*) we find the following indication of the rule to be followed (at p. 362): " Where a passenger is expelled from a train and without fault on his part, *he may recover more than nominal damages, although he has suffered no pecuniary loss or received actual injury to the person by reason of such expulsion, and the jury in estimating the damages may consider not only the annoyance, vexation, delay and risk to which the person was subjected, but also the indignity done him by the mere fact of his expulsion.*" (Italics mine.)

It can well be conceived that in a case of this character the indignity, the humiliation and the nervous strain might have a graver aspect even than the physical injuries inflicted.

An examination of the authorities is persuasive that the standing in the community and the station in life of the party thus affronted may well be considered. In *Coorman* v. *Brooklyn Heights R. R. Co.* (127 App. Div. 315), which, incidentally, is indistinguishable, in legal principle, from the instant case, the action, brought in the Municipal Court, established an assault by a conductor with accompanying insult and striking about the face and head. It is interesting to note the exculpation attempted by the defendant in that case, which was that the conductor said " that he had an idea that the plaintiff was going to strike him " — a mistaken assumption, as obviously was the assumption of the servant in the

case now before the court. A jury in the Municipal Court in 1908 *assessed damages at $500.* The Appellate Division affirmed this determination, pointing out that the plaintiff had a responsible business position, was " apparently a peaceable law-abiding citizen," and also that he had sustained some personal injuries and also undoubted indignity and humiliation.

In that case the following pertinent language appears (at p. 316): " While it is true that the physical injuries sustained by the plaintiff are comparatively trivial, we are not disposed to hold, as urged by the defendant, that the verdict is excessive.   *   *   * It is difficult to estimate the damages sustained by one through humiliation, *but it may be safely said that few business men, taking the facts into consideration, would say that $500 was adequate compensation for being struck in the face by an employee of the company, and otherwise insulted, threatened and abused."*

While no mechanical rule can ever be adduced from the cases as to what amount is proper or what amount is here excessive or inadequate, as recompense, the reasoning which led to an affirmance of the verdict in the *Coorman* case is adopted. Of course, the fact that the Appellate Division did not consider the verdict excessive, as a matter of law, does not necessarily establish that it was correct as a matter of fact. Believing that the plaintiff has been affronted, has sustained physical injuries, and has been subjected to the type of humiliation and indignities referred to above, and that these results flow from a breach of the contract of safe carriage imposed upon the carrier by the dictates of public policy, I am of the opinion that a verdict of $450 is moderate and proper, in the light of the authorities above set out.

The motions to dismiss the complaint for want of jurisdiction and for failure to make out a cause of action are, therefore, denied, and plaintiff's motion for a directed verdict granted, and the amount of such verdict fixed at the sum of $450, with exceptions to the defendant.

Ten days' stay.