Maurice Wahl, J.
This is an action by the plaintiff, a mature lady, against the defendant, a common carrier, for damages arising from the abusive and discourteous treatment accorded the plaintiff while a passenger on a Fifth Avenue bus. The plaintiff had boarded this vehicle at 34th Street and Fifth Avenue, and its route was northerly on Fifth Avenue and thence easterly on 59th Street and over the bridge to Queens County. When the bus passed Third Avenue and 59th Street, the plaintiff signalled twice to the driver for the purpose of alighting at 59th Street and Second Avenue. The bus failed to stop, and continued over the bridge to Queens, carrying the plaintiff out of her way, causing great inconvenience and delay in arriving at her home at East 58th Street, Manhattan. She testified she had out-of-town guests at her home for dinner and, in addition, had recently undergone operative treatment for varicose veins. She alleged that she suffered severe physical discomfort, besides being subjected to abusive and unseemly language from the driver when she remonstrated with him for his failure to stop. The gravamen of her complaint is that in the discussion which ensued, the driver, in a boisterous and stentorian manner, shouted that it was too late to stop, etc., and when the plaintiff sought to have her return fare paid, he became abusive and offered her a transfer which could not be utilized. Finally, it is asserted that his tirade of senseless and unprovoked wrath caused the plaintiff humiliation and embarrassment.
The plaintiff, in order to reduce the delay in getting home, sought a cab, unsuccessfully, and thereupon boarded a Man *693 hattan-bound bus. She tendered the transfer but it was rejected because it was for the opposite direction, and she was compelled to pay another fare.
Actuated by the thought that the way to promote and inflict further indignities upon a long-suffering public is to submit to them, the plaintiff brought this action for damages in the sum of $500, based on breach of contract and for negligence.
The driver’s explanation that he did not receive the signal in time is unsatisfactory for, after some hesitation, he admitted giving her an unusable transfer and he seemed to evince a vagueness as to some of the material facts while on the witness stand. The court has concluded that, in the main, his testimony is unworthy of acceptance.
The court is therefore confronted with the problem whether the facts are sufficient to predicate liability and, if so, to what extent.
In limine, the court dismisses the contention of the defendant that the doctrine of respondeat superior is inapplicable to the facts at bar. It is well settled that a carrier is liable for the acts of its servants and the natural and legitimate consequences thereof, and it is encumbent upon the carrier to accord passengers respectful and courteous treatment. (Stewart v. Brooklyn & Crosstown R. R. Co., 90 N. Y. 588; Dioinelle v. New York Cent. R. R. Co., 120 N. Y. 117; Public Service Law, §§ 26, 60, 60-a.)
The defendant would limit plaintiff’s recovery to the amount of her fare. While it is true that the carrier’s liability arises out of a breach of its contractual obligations, her recovery extends beyond the contractual amount to the consequential damages resulting from the breach. Thus, in Campbell v. Pullman Co. (182 App. Div. 931) it was held error to limit recovery to the amount paid by plaintiff for the ticket and to exclude evidence in regard to the discomfort and inconvenience to which plaintiff was put by the breach of defendant carrier’s contract.
The coincidence of tort and contract liability is not new, and extends to many types of business relationship. (Vide Aaron v. Ward, 203 N. Y. 351 [Public bathhouse]; Pearsall v. Western Union Tel. Co., 124 N. Y. 256 [Error in transmission of message] ; Stella Flour & Feed Corp. v. National City Bank, 285 App. Div. 182 [Wrongful dishonor of check].)
The plaintiff does not seek compensation for direct personal injury, for she was not touched, but rather for indirect mental anguish.
*694 Some early cases, relied upon by the defendant, refused to allow recovery for mental anguish where it was unaccompanied by physical injury. This dichotomy is untenable in an age when psychiatry has shown the profound and disastrous effects of mental anguish, even in the absence of apparent physical injury.
The injustice of the old doctrine was set forth as early as 1823 by Judge Stout of the Circuit Court of" the United States. In a situation similar to the one at hand, involving a passenger on a ship, he stated, “ It is intimated that all these acts, though wrong in morals, are yet acts which the law does not punish; that if the person is untouched, if the acts do not amount to an assault and battery, they are not to be redressed. The law looks upon them as unworthy of its cognizance. The master is at liberty to inflict the most severe mental sufferings, in the most tyrannical manner, and yet if he withholds a blow, the victim may be crushed by his unkindness. He commits nothing within the reach of civil jurisprudence. My opinion is, that the law involves no such absurdity. It is rational and just. It gives compensation for mental suffering occasioned by acts of wanton injustice, equally whether they operate by way of direct, or of consequential injuries. In each case, the contract of the passengers for the voyage is in substance violated; and the wrong is to be redressed as a cause of damage.” (Chamberlain v. Chandler, 3 Mas. 242, 246-247.)
Joyce, in his treatise on Damages, discusses mental suffering in these situations and cites cases which permitted recovery for fright, worry and mental anguish where a passenger was carried beyond her destination although no physical injuries were sustained. (Joyce, Damages, 412; see, also, Thomson, Negligence, 3186, 3288; Warren, Negligence, pp. 190-191.)
The New York rule on this point is in accord, holding that the mere absence of physical injuries is not sufficient to prevent liability for damages for the indignity, humiliation and nervous strain caused by insulting and abusive language.
Gillespie v. Brooklyn Heights R. R. Co. (178 N. Y. 347), the leading case in New York, was a suit by a passenger for the humiliation and injury to his feelings caused by the insulting language of the carrier’s employee. After reviewing the early cases and enunciating the doctrine that a common carrier is obligated contractually to transport its passengers in a safe, respectful and courteous manner, the Court of Appeals concluded that the defendant’s conduct was a breach of its duty making it liable for any injury suffered by plaintiff as a result of the insulting and abusive language.
*695 In the more recent case of Kellogg v. Commodore Hotel (187 Misc. 319) the Gillespie rule was followed, the court stating that it is “ settled law ” in this State that a passenger may recover damages for insulting and slanderous words uttered by the conductor of a railway car.
Similarly, Barad v. New York R. T. Corp. (162 Misc. 458) reaffirmed the Gillespie position, pointing out that plaintiff’s recovery is not limited to physical injuries but may extend to humiliation and injuries to feelings. Reiterating that the recovery flows from a breach of the contract of safe passage imposed on the carrier by public policy, the court assessed the damages for such humiliation and indignities at $450. Vide, also, Coorman v. Brooklyn Heights R. R. Co. (127 App. Div. 315) sustaining an award of $500 upon the same theory.
A high degree of responsibility devolves upon common carriers for the acts of their servants, and, this is so, even where the torts are intentional. This obligation requires that the carrier choose its employees with care. However, the courts cannot as yet accept the contention advanced by the plaintiff that we may take judicial notice of the rudeness and incivility of many of the manual operators of buses and cabs in this metropolis. Parenthetically, it is hoped that these modern jehus may, in time, reform and prove to themselves that soft words never hurt the tongue — indeed, may be beneficial to all concerned. The evidence does indicate that the contract for safe and courteous passage from the point where the plaintiff boarded the carrier and the place of destination was not performed. The breach was accentuated by the indignity. The liability is evident, and, therefore, the remaining question is one of damage.
Here, too, the Gillespie case is on point. In discussing the evidence of damage to be considered, the Court of Appeals states (p. 359) that “Among the elements of compensatory damages for such an injury are the humiliation and injury to her feelings which the plaintiff suffered by reason of the insulting and abusive language and treatment she received, not, however including any injury to her character resulting therefrom * * * ‘ Damages given on the footing of humiliation, mortification, mental suffering, etc. are compensatory, and not exemplary damages. They are given because of the suffering to which the passenger has been wrongfully subjected by the carrier. ’ ”
The court further points out that the jury may consider not only the annoyance, vexation, delay and risk to which the person was subjected, but also the indignity caused him. Here, too, *696 the court rejected the claim that the passenger’s recovery was limited to the amount of the fare paid, and held that plaintiff was entitled to recover for the humiliation and injury to her feelings. (See, also, Jacobs v. Third Ave. R. R. Co., 71 App. Div. 199.)
The Appellate Term, in this department, in 1937 reached the same conclusion in Davis v. New York Cent. R. R. Co. (163 Misc. 710), stating that it is for the jury to determine and assess the damages for discomfort and inconvenience resulting from defendant’s failure to provide plaintiff with a seat.
The court therefore awards the plaintiff the sum of 30 cents, the two fares paid by her, for the failure of the carrier to comply with the contract for transportation, and the sum of $100 for the mortification and humiliation suffered by her.
Judgment may be entered for the plaintiff in the sum of $100.30.